MANDALAYWALA, Appellee,

v.

ZALESKI, Appellant, et al.

[Cite as *Mandalaywala v. Zaleski* (1997), 124 Ohio App.3d 321.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE05–649.

Decided Nov. 25, 1997.

*Michael T. Gunner*; *Moots, Cope & Stanton Co., L.P.A.*, and *Jon M. Cope*, for appellee.

*Schottenstein, Zox & Dunn, Kris M. Dawley* and *Edwin L. Skeens*, for appellant.

*Vorys, Sater, Seymour & Pease* and *Algenon L. Marbley*, for receiver Frederick L. Ransier.

DESHLER, Judge.

This is an appeal by defendant from a judgment entry of the Franklin County Court of Common Pleas, granting plaintiff's motion to confirm a sale and denying defendant's motion to compel and for an accounting.

Plaintiff, Ramakant Mandalaywala, and defendant, Bogdan Zaleski, are the sole shareholders and directors of Omnitech Electronics, Inc. ("Omnitech"), an Ohio corporation engaged in the business of providing biomedical products to universities, pharmaceutical companies, and private research labs. Plaintiff and defendant each own one hundred shares of the corporation's stock (the corporation consisting of a total of two hundred shares issued and outstanding). Omnitech's place of business is a building and acreage located at 5090 Trabue Road, Columbus. The real property is owned fifty percent by plaintiff and fifty percent by defendant; the premises are rented to Omnitech.

On June 14, 1996, plaintiff filed a complaint against defendant and various others seeking to dissolve the corporation pursuant to R.C. 1701.91.[1] The complaint alleged that defendant had made unauthorized payments or disbursements from the business accounts of Omnitech, and that he had prevented plaintiff from having access to the company books, records, accounts, and affairs. It was further alleged that plaintiff and defendant were deadlocked in the management of the corporate affairs and that dissolution of the corporation was warranted.

On July 24, 1996, defendant filed an answer and counterclaim. The counterclaim alleged that plaintiff had engaged in wrongful activities and thus breached certain duties to defendant and the corporation. Upon joint motion of the parties, the trial court appointed a receiver for Omnitech. By entry filed on July 31, 1996, the trial court granted the receiver authority to operate the business.

On September 25, 1996, plaintiff and defendant signed a "letter of intent" in which the parties agreed to an auction, to be conducted by the receiver, whereby both shareholders would have the opportunity to bid on the assets of the corporation and to purchase the real property. The bidding procedures to be employed for the sale of Omnitech were set forth in the letter of intent, which provided in pertinent part as follows:

"This serves as our letter of intent as discussed at our September 24, 1996, meeting with Receiver, Fred Ransier.

---

1. The complaint named as defendants Omnitech Electronics, Inc., Bogdan Zaleski, Lidia Zaleski, Advisors Pension Services, Inc., National City Bank, and Merrill Lynch.

"1. The successful bidder has 30 days from September 26, 1996, to arrange financing and to pay the purchase price for all the assets of Omnitech Electronics, Inc. and the real property located at 5090 Trabue Road, Columbus, Ohio 43228 and improvements located thereon, in cash or wire transfer (collectively, the 'Assets').

"2. Should the successful bidder fail to pay the full purchase price for the Assets within 30 days, the unsuccessful bidder shall purchase the Assets at a price equal to the unsuccessful bid, discounted by one-third to be paid in full by cash or wire transfer within 30 days thereafter.

"3. The successful bidder shall have the right to allocate the purchase price amongst the Assets and the unsuccessful bidder shall be bound by such allocations; provided however, that such allocation shall result in the corporation receiving a sufficient amount to satisfy the corporation's liabilities as determined by the Receiver.

"4. The parties shall cooperate in the dissolution of the corporation, including the satisfaction of all corporation's liabilities prior to liquidation, and will execute any and all necessary documents as required by the Receiver, Fred Ransier.

" * * *

"6. Each party shall dismiss without prejudice all claims currently existing against the other as of the date of the closing of this Asset purchase.  * * *

"7. All terms of the settlement and the existence of the bidding to be maintained as 'confidential' between the parties with agreement not to disclose terms to anyone else not a party or counsel.

" * * *

"10. Before the corporation is dissolved, the corporation shall cause its defined benefit pension plan to terminate and satisfy its benefit liabilities, if any, in accordance with the plan documents and applicable law. Neither the successful bidder nor the unsuccessful bidder shall have any personal liability with respect to the defined benefit pension plan or other liabilities of the corporation, except to the extent provided by applicable law.

"11. Each party shall execute quit-claim deeds in favor of the other party with respect to the real property and deliver such deeds, in recordable condition, to the Receiver on September 26, 1996. The Receiver shall hold such deeds in trust until the Assets are purchased in accordance with Item 2 above."

On September 26, 1996, the bid was conducted at the office of the receiver, Frederick L. Ransier. Plaintiff was the successful bidder of the assets and real estate for the purchase price of $810,000. The receiver sent both parties a letter,

dated September 26, 1996, confirming the results of the bidding process. The letter stated in part:

"This letter is to confirm the results of the bid for the assets of Omnitech Electronics, Inc., and the business real estate owned jointly by Ramakant H. Mandalaywala and Bogdan Zaleski. The bid was conducted at my offices on this date. Ramakant H. Mandalaywala is the successful bidder of the assets and real estate for Eight Hundred Ten Thousand Dollars ($810,000.00).

"Pursuant to the agreed terms Mr. Mandalaywala shall immediately take possession of the building and the assets. Mr. Zaleski shall remove all personal property from the premises and has agreed to turn over the keys to the building. Kris is to deliver to my office the fully executed quit-claim deed before the end of business this date.

"Pursuant to the terms of the bid Mr. Mandalaywala shall allocate the purchase price amongst the assets purchased. The purchase price less the amount allocated for real estate shall be paid within 30 days hereof. Mr. Mandalaywala will pay directly to Mr. Zaleski, or his designee, one-half of the amount allocated towards the purchase of the real estate as determined by Mr. Mandalaywala, in full payment of the interest of Bogdan Zaleski in and to same. The balance of the purchase price shall be deemed payment for the business assets of the corporation and paid to the undersigned.

"I wish to thank each of you for your assistance in bringing closure to this matter. * * *"

Pursuant to paragraph three of the letter of intent, plaintiff allocated $600,000 to the real estate and $210,000 to the business assets. Plaintiff subsequently submitted payment in the amount of $510,000, allocated in the following manner: $210,000 paid to the receiver for acquisition of the corporate assets, and $300,000 paid directly to defendant for defendant's fifty-percent interest in the real estate. Plaintiff retained $300,000 of the total bid amount as his fifty-percent share of the real estate.

By letter dated October 28, 1996, counsel for defendant, Kris Dawley, corresponded with the receiver regarding the purchase price and the payment submitted by plaintiff following the bid process. Counsel's letter stated in part:

"As we discussed during our telephone conversation of October 25, 1996, and October 28, 1996, Kant's $510,000 payment, to you, for the purchase of all assets of Omnitech Electronics, Inc. and Bogdan's 1/2 interest in the real property located at 5090 Trabue Road is a breach and does not comply with the September 25, 1996, Letter of Intent ('Agreement'). As a result of Kant's failure to comply with paragraph 2 of the Agreement and pay the *full purchase price* for the assets of Omnitech Electronics, Inc. and Bogdan Zaleski's 1/2 interest in real property,

Bogdan has decided to invoke paragraph 2 of the Agreement and purchase the assets at the 1/3 discount. According to my calculations, the 1/3 discount would make the purchase price $540,000.

" * * *

"As we discussed, I agree that prior to the bid you asked whether the real property interest would be bid separate from the corporate assets. I also agree that all parties stated that the real property and the business assets would be bid together. However, I disagree with the remaining statements contained on page 2, paragraph 3 of your October 26, 1996, letter as well as all statements made on page 2, paragraph 4 of your October 26, 1996, letter. You have also agreed that the assets purchased at the September 26, 1996, bid were all corporate assets of Omnitech Electronics, Inc. and the 1/2 interest of Bogdan Zaleski in the real property located at 5090 Trabue Road.

"You have indicated in our conversations that in your mind there may have been a mutual misunderstanding regarding the terms of the bid * * *."

On November 5, 1996, defendant filed a motion to compel the receiver to comply with the terms of the letter of intent and for an accounting. In the accompanying memorandum, defendant argued that in the September 25, 1996 letter of intent, the parties set out the bidding procedure regarding the sale of Omnitech and that, pursuant to the terms thereunder, the bid price was to include all corporate assets of Omnitech as well as the remaining fifty-percent ownership interest in real estate held by the unsuccessful bidder. Defendant argued that, although thirty days had passed since September 26, 1996, plaintiff had failed to pay the full purchase price (i.e., $810,000) in accordance with the letter of intent; rather, it was argued, plaintiff had tendered only $510,000. Thus, defendant asserted, pursuant to Section 2 of the letter of intent, the receiver was required to allow defendant to purchase the assets at two-thirds of the price of the unsuccessful bid, and the receiver was required to allow defendant to take over the operations of the business.[2]

On November 13, 1996, plaintiff filed a motion in opposition to defendant's motion to compel. In the corresponding memorandum, plaintiff argued that, although "as stated by defendant Zaleski the parties herein had resolved their disputed issues and agreed to a winner-take-all auction at the receiver['s] * * * office to be conducted on September 26, 1996," contrary to defendant's contentions, the auction was to consist of a purchase from the corporation of all of the corporate assets as well as the entire interest in real estate from the partnership. Plaintiff argued that, after negotiating whether the bidding process would be a

---

2. On November 5, 1996, defendant filed a cross-claim against Omnitech and an amended counterclaim against the plaintiff.

"net" bid or a "gross" bid, the terms of the bidding, as requested by defendant and agreed to by plaintiff, allowed the successful party to allocate the purchase price between the corporate assets and real estate in any manner he chose. Thus, plaintiff argued, the successful party was required to pay to the receiver only one hundred percent of the purchase price allocated to the corporate acquisition; of this one-hundred-percent purchase price, the successful bidder was to eventually receive back one-half of all remaining monies in the receiver's account after the receiver's expenses were paid.

Plaintiff also argued that "the purchase price allocated to the real estate purchase which was not part of the funds held by the receiver, was to be paid 1/2 to the unsuccessful party directly since the successful party could retain his 1/2 of the purchase price because the receiver was not concerned with these funds." Thus, plaintiff contended that he was the successful bidder for $810,000 and that he timely made his allocation of $600,000 to the real estate and $210,000 to the corporate assets; further, plaintiff argued, in accordance with the receiver's confirming letter, he paid $510,000 consisting of a payment of $210,000 to the receiver for acquisition of the corporate assets, and $300,000 paid directly to the defendant for defendant's portion of the real estate, while retaining $300,000 as plaintiff's share of his ownership interest in the real estate.

On November 15, 1996, plaintiff filed a motion to confirm the sale by the receiver and for a protective order. Attached to the motion was the affidavit of the receiver, Frederick L. Ransier. In his affidavit, the receiver related his account of the bidding procedure conducted between the parties and their legal counsel at Ransier's office on September 26, 1996. Ransier averred in his affidavit that prior to the commencement of the bidding, he announced, "among other things, for purposes of the bidding the real estate would be bid at its full value and not the one-half value to be purchased." Ransier further stated that he "repeated this announcement concerning the real estate valuation for bid purposes on at least two other occasions during the bidding process."

The affidavit noted that the successful bid was made by plaintiff in the amount of $810,000, and that pursuant to the letter of intent, plaintiff was entitled to immediate possession of the business and the assets. Further, in accordance with the letter agreement, plaintiff was given the right to allocate the purchase price between the real estate and business assets. The receiver noted that immediately following the bidding, he drafted a letter confirming the sale and sent the letter to counsel for both parties; in the letter, plaintiff was instructed that payment of the purchase price "less the amount allocated for real estate" was to be paid to the receiver within thirty days, and plaintiff was further instructed to pay defendant "one-half of the amount allocated towards the purchase of the real estate as determined by [plaintiff]."

The affidavit of the receiver stated that, on October 22, 1996, he was advised in writing by counsel for plaintiff that the allocation of the bid price of $810,000 would be $600,000 for the real estate and $210,000 for the business assets. The receiver further averred that on October 26, 1996, plaintiff tendered to the receiver two checks, one in the amount of $210,000 for the business assets and the other in the amount of $300,000 "in payment for Mr. Zaleski's partnership interest in the real estate, all in accordance with the letter confirming the sale." The receiver further stated that "at no time prior to the tendering of the bid process was any question raised concerning the bid process or the instructions for payment of the purchase price set forth in the letter confirming the bid."

On December 6, 1996, defendant filed a motion in opposition to plaintiff's motion to confirm the sale. In the accompanying memorandum, defendant disputed statements made by the receiver in his affidavit. Defendant also submitted his own affidavit and the affidavits of both of his attorneys. In his affidavit, defendant stated in part that "[a]ll parties agreed that the assets being sold at the auction were Omnitech's business assets and one-half of the real property on which the business is located." Defendant further averred that he was present during the auction and that "[a]t no time during the auction or any other time was there any discussion or agreement that the successful bidder could tender only one-half of the amount of the purchase price allocated to the real estate." The affidavits submitted by defendant's counsel also made similar averments. Defendant's motion in opposition also requested an evidentiary hearing before the trial court.

On May 27, 1997, the trial court rendered its decision, denying defendant's motion to compel and granting plaintiff's motion to confirm the sale. The trial court found in part that plaintiff had "substantially complied with the parties' agreement as set forth in the September 25, 1996, Letter of Intent." The trial court further denied a motion for a hearing on the matter.

On appeal, defendant sets forth the following assignment of error for review:

"The lower court erred in confirming the sale of the assets of Omnitech Electronics, Inc. by the Receiver because the successful bidder failed to comply with the terms of the Letter of Intent between the parties."

At the outset, we note that plaintiff argues in his appellate brief that an appeal by defendant is premature at this stage of the proceedings because, it is contended, an order confirming a receiver's sale is not a final order from which an appeal can be taken. We further note that, during oral argument, counsel for plaintiff indicated that a motion to dismiss the appeal on that basis had been filed, but counsel further stated that the motion may not have been properly filed with this court. A review of the record indicates that such a motion was not filed with this court, although a response to a motion to dismiss was filed by the defendant.

It appears that plaintiff's motion to dismiss was inadvertently filed with the trial court rather than with this court.

Although the motion to dismiss is not properly before this court, we will nonetheless consider the jurisdictional issue whether an order by the trial court confirming a sale by a receiver is a final appealable order. R.C. 2505.02 defines a "final order" to include "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

Initially, we note that the Ohio Supreme Court has previously held that "[a]n order appointing a receiver is an order affecting a substantial right made in a special proceeding and is a 'final order.'" *Forest City Invest. Co. v. Haas* (1924), 110 Ohio St. 188, 143 N.E. 549, paragraph one of the syllabus. See, also, *Cincinnati, Sandusky & Cleveland R. Co. v. Sloan* (1876), 31 Ohio St. 1, 1876 WL 221, paragraph two of the syllabus; *Prudential Ins. Co. of Am. v. Corporate Circle, Ltd.* (1995), 103 Ohio App.3d 93, 101, 658 N.E.2d 1066, 1071 ("proceedings in relation to the appointment and removal of receivers are special proceedings under R.C. 2505.02" and "orders for appointment and removal affect a substantial right made in a special proceeding").

Further, Ohio courts in general have held that orders confirming or refusing to confirm a judicial sale are appealable. In *Lomas & Nettleton Co. v. Warren* (Sept. 16, 1988), Geauga App. No. 1405, unreported, 1988 WL 96635, the court noted:

" 'The view generally taken by the courts is that finality for the purpose of appeal is inherent in a decision confirming a sale, or refusing to confirm a sale, as by sustaining objections to a judicial sale and setting it aside. * * *' 4 American Jurisprudence 2d (1962) 663, Appeal and Error, Section 148. 'All parties—the plaintiff, the defendant, and the purchaser—may be heard in the confirmation proceeding: * * * The purchaser at a judicial sale has certain rights which the court is bound to protect equally with the rights of the parties to the action. It is competent for the purchaser, as well as for the defendant in the principal action, at any time after the return of sale, to invoke the action of the court either to set aside or to confirm the sale. * * *' 64 Ohio Jurisprudence 3d (1985) 182, Parties, Section 83. ' * * * An order confirming or vacating the sale is reviewable for a manifest abuse of discretion, provided it appears by the record on appeal. * * *' 64 Ohio Jurisprudence 3d (1985) 188, Judicial Sales, Section 87."

In *Dairymen's Co-op. Sales Co. v. Frederick Dairy Co.* (1933), 16 Ohio Law Abs. 17, the Seventh District Court of Appeals addressed the issue whether an

order by a trial court confirming a sale of property by a receiver in receivership proceedings is a final order from which error lies to the appellate court. Under the facts of *Dairymen's,* a receiver was appointed to operate the Frederick Dairy Company ("Frederick"). Bids were subsequently received for the sale of the property, and the trial court put on an order authorizing the sale of the assets of the company to the successful bidder. Attorneys for plaintiff, a creditor, filed a petition in error from the judgment and order of the court directing and confirming a sale of the property. Counsel for defendant Frederick filed a motion to dismiss, asserting that the ordering of a sale of property by the receiver was not a final order.

The court in *Dairymen's* rejected defendant's argument, holding in part:

" * * * The Common Pleas Court ordered a sale of the entire assets of this dairy company. If that was not an order from which appeal or error could be prosecuted, nothing could be done, and the administration of the estate would thereafter follow to whatever final determination might be reached, and if, as a matter of fact, the sale should not have been made and this remained by subsequent developments, it would then be absolutely too late to remedy the error or the damage which might be done. That is to say, if there is any right to determine the legality or propriety of the sale to this purchaser, it necessarily must come through the exercise of such right following such action and before the further progress of the case." *Id.* at 19.

Similar reasoning has been applied by courts in other jurisdictions in holding that an order confirming a sale by a receiver is a final appealable order. In *United States v. "A" Mfg. Co., Inc.* (C.A.5, 1976), 541 F.2d 504, 506, the court cited with approval the following authorities in holding that an order confirming a sale by a receiver is appealable:

"In *First National Bank v. Shedd,* 1886 [1887], 121 U.S. 74, 7 S.Ct. 807, 30 L.Ed. 877, a foreclosure on a mortgage was before the Court. In considering the appealability of an order of sale entered before the rights of the party under the mortgage was determined the Court overruled the motion to dismiss, holding that the case was taken from a final decree and not from an interlocutory order.

"In *State of New York v. Kilsheimer,* 2 Cir., 1957, 251 F.2d 175, the Court held in a receivership proceeding that an order which approves bids and confirms sales under those bids is appealable.

"The Supreme Court long ago in *Sage v. Railroad Company,* [1877], 96 U.S. 712, 714, 24 L.Ed. 641 stated that:

" 'We have often decided that a decree confirming a sale, if it is final, may be appealed from. * * * In this case it is final, so far as title under the sale is concerned. It cuts off the equity of redemption by the railroad company and the

junior mortgagees and general creditors, except as provided in the decree of Oct. 22; and passes the title to the purchaser, subject to certain trusts already fixed by the court, over which the present appellants have control only through their appeal from the former decree. No reversal of any order hereafter made will necessarily divest this title. The proceedings hereafter will relate only to the disposition of the property acquired by the purchase and the proceeds of the sale. For relief against the sale, resort can alone be had to an appeal from the decree of confirmation.' (Citations omitted.)

"These cases, spanning a century, clearly establish the rule that an interlocutory order commanding a sale, and one confirming a sale are appealable."

██ We find the reasoning in these cases to be persuasive. One commentator has noted that "[a] receivership can drastically curtail existing property rights, foreclosing independent action and decision in irreparable ways." 16 Wright, Miller & Cooper, Federal Practice and Procedure (1996) 217, Section 3925. In the present case, the trial court's order confirming the sale of property by the receiver in effect adjudicates, between equal shareholders, the right to ownership and control of the corporation. We conclude that the order is one affecting a substantial right from which an appeal to this court lies. *Dairymen's, supra.*

Accordingly, we now consider the issue whether the trial court erred in confirming the sale of assets of Omnitech. While defendant raises a number of issues under his single assignment of error, we initially consider defendant's contention that the trial court erred in failing to conduct an evidentiary hearing, prior to granting plaintiff's motion to confirm, to take evidence on issues relating to plaintiff's allocation of assets and plaintiff's compliance with the terms of the letter of intent.

We find a recent Ohio Supreme Court decision to be instructive. In *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 683 N.E.2d 337, the appellant initiated an action against his two brothers, alleging that the brothers had excluded him from the operation of a corporation, in which the three were equal shareholders, and from a partnership, in which the three were equal partners. Appellant sought a financial accounting of the two businesses and access to the books and records of the corporation and partnership.

At a subsequent hearing before the trial court on pending motions, counsel for both parties indicated that they had reached a settlement agreement under which they had resolved all matters at issue in the dispute. Counsel for appellant read into the record that appellant would purchase his brothers' interest in both the corporation and partnership by paying them $950,000 each for their interest, and that the corporation would be sold by asset sale, with the terms being cash payable within ninety days. All three brothers also agreed to be equally

responsible for a mortgage and parcel of real estate owned by the partnership. All parties indicated before the trial court that they understood the parameters of the settlement agreement and agreed to be bound by it. The trial court then stated that the court "would 'mark the case called for hearing, case settled and dismissed,' and gave counsel twenty-one days to submit a separate judgment entry." *Id.* at 374–375, 683 N.E.2d at 338.

However, a separate entry was never filed, and the parties failed to complete a formal purchase agreement. Appellant's brothers subsequently filed a motion to enforce the agreement, in which they disputed the meaning of statements read into the record at the prior hearing; appellees contended that the agreement required appellant to pay $1.9 million for the entire partnership and its assets and for the inventory of the corporation free and clear of liabilities, and that they each were responsible for paying one-third of an existing mortgage. Appellant, on the other hand, argued that he was responsible only for purchasing the assets of the partnership and corporation, and that the partners were to then pay off the existing mortgage and distribute to each of the parties the balance of their capital and income accounts, resulting in the appellees each receiving $852,200 as a net proceed from the transaction. Thus, appellant filed a motion to vacate the court's prior judgment entry.

The trial court conducted a proceeding in which the court allowed oral arguments on the motions. At the hearing, appellant attempted to admit two exhibits. The trial court, however, sustained appellees' objection, holding that the parties had reached a settlement at the prior hearing, and the court entered judgment according to appellees' interpretation of the agreement. Following an affirmance by the appellate court, the matter was further appealed to the Ohio Supreme Court.

In *Rulli*, the issue before the court was whether the trial court abused its discretion by ordering enforcement of the disputed settlement agreement without first conducting an evidentiary hearing. The court concluded that it was not within the province of the trial court to enforce a purported settlement agreement "when the substance or the existence of that agreement is legitimately disputed." *Id.*, 79 Ohio St.3d at 376, 683 N.E.2d at 338. The court in *Rulli* held:

"The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof. * * * To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. 'A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying

factors and circumstances, are not such that the court can determine what the terms of the agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.' (Footnote omitted.) 1 Corbin on Contracts (Rev. Ed.1993) 525, Section 4.1.

"In addition, the law disfavors court enforcement of contracts laden with ambiguity. * * *

"We observe that courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants. * * * Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms." *Id.* at 376, 683 N.E.2d at 338–339.

The court in *Rulli* then noted that, although the terms of the settlement as read into the record appeared to be reasonably clear, the parties were subsequently unable to agree upon the meaning and effect of those terms. The court ultimately concluded:

"Given the lack of finality and the dispute that evolved subsequent to the initial settlement hearing, we hold that the trial judge should have conducted an evidentiary hearing to resolve the parties' dispute about the existence of an agreement or the meaning of its terms as read into the record at the hearing, before reducing the matter to judgment. Where parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement. In the absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing. * * *

"Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.,* 79 Ohio St.3d at 377, 683 N.E.2d at 339.

We find the holding in *Rulli* to be relevant to the facts of the instant case. As noted above, *Rulli* involved a dispute over the meaning of the terms of a "settlement agreement." In the present case, the record indicates that the parties entered into negotiations regarding the sale of the corporation; as a result of these discussions, the material terms of an agreement regarding the right of one of the shareholders to successfully bid and acquire the entire assets of the corporation and the real property were memorialized in the "letter of

intent" signed by both parties on September 25, 1996.[3] Although the letter was designated a "letter of intent," we view the letter agreement as representing a final resolution of the parties' dispute as to the manner in which the corporate assets and real estate were to be disposed, and thus analogous to the settlement agreement at issue in *Rulli* under which the parties also purported to have resolved the disposition of the corporation and partnership assets.

In the present case, one of the primary issues before the trial court was whether the amount tendered by plaintiff as the purchase price for the corporation assets and real property complied with the requirements of the letter of intent. The parties, however, dispute the meaning of various terms of the agreement letter. Specifically, defendant asserts that the letter of intent, pursuant to paragraph two, clearly requires the successful bidder to pay "the full purchase price for the Assets," and that the agreement contains no provision allowing the payment of one-half the purchase price of the real property.

In response, plaintiff argues that language in the letter of intent regarding "full purchase price" is an "obviously ambiguous provision" in the agreement; plaintiff contends, however, that the above provision must be considered *in pari materia* with paragraph three of the agreement, which provides in part that the successful bidder possesses "the right to allocate the purchase price amongst the assets and the unsuccessful bidder shall be bound by such allocations; provided however, that such allocation shall result in the corporation receiving a sufficient amount to satisfy the corporation's liabilities as determined by the Receiver."

Plaintiff further argues that defendant has misconstrued provisions in the letter of intent regarding the payment of corporate liabilities. Plaintiff maintains that the letter of intent did not require the allocation of the purchase price to be sufficient to cover all corporate liabilities; rather, plaintiff contends, by signing the letter of intent, that both parties relegated to the receiver the determination as to whether the portion of the purchase price allocated to the corporation was sufficient to meet liabilities.

In the present case, there are factual disputes regarding the terms of the agreement, and, as in *Rulli*, the parties have "offered varying interpretations of the terms." *Rulli, supra*, 79 Ohio St.3d at 377, 683 N.E.2d at 339. As noted above, at issue is the meaning to be given to terms of the agreement regarding payment for "the full purchase price," as well as the right of the successful bidder to "allocate the purchase price" among the assets. Further, although the

---

3. Generally, a letter of intent is not in principle a contract, but rather merely a contract to continue to bargain in good faith. Corbin on Contracts (Perillo Ed., Rev.1993) 46, Section 1.16. However, "there are times when letters of intent are signed with the belief that they are letters of commitment." *Id.* at 47.

successful bidder was to pay the full purchase price for the assets of Omnitech and the real property, the agreement is not specific whether the real property was to be bid at its full value or at the value of the one-half interest to be sold. The issues raised regarding the varying interpretations of the letter of intent indicate that there are ambiguities in the agreement that necessitate an evidentiary hearing by the trial court to determine the intent of the parties and the correct interpretation of the agreement.

While we find that the trial court erred in failing to conduct an evidentiary hearing, we also note concern as to the trial court's apparent determination that there were sufficient assets to satisfy any outstanding corporate liabilities. As previously noted, paragraph three of the letter of intent requires that the allocation by the successful bidder "shall result in the corporation receiving a sufficient amount to satisfy the corporation's liabilities as determined by the receiver." A review of the record, however, fails to indicate that the receiver, at the time of this appeal, had made a final determination as to the liabilities of the corporation.[4] Thus, we find merit with defendant's contention that there was an absence of evidence to support the trial court's determination that all outstanding corporate liabilities have been satisfied; in light of our determination that this matter should be remanded for an evidentiary hearing, this issue should be given full consideration as part of the hearing on remand.

Finally, we do not reach defendant's argument that he is entitled to purchase Omnitech for the amount of the unsuccessful bid, discounted by one-third, as this issue implicates matters to be considered in the first instance by the trial court at the hearing regarding the meaning of the terms of the letter of intent.

Based upon the foregoing, we find that the trial court erred in failing to hold an evidentiary hearing regarding the factual dispute over the terms of the letter of intent prior to confirming the sale. Accordingly, the single assignment of error is sustained to the extent provided above, the judgment of the trial court is reversed, and this matter is remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK, P.J., and PEGGY BRYANT, J., concur.

---

4. One of the liabilities at issue involves the defined benefit pension plan. Paragraph ten of the letter of intent provides in part that "[b]efore the corporation is dissolved, the corporation shall cause its defined benefit pension plan to terminate and satisfy its benefit liabilities, if any, in accordance with the plan documents and applicable law." The record does not indicate that there has been a determination whether there are sufficient assets to pay liabilities of the plan upon termination.