OPINION
{¶ 1} Appellant, Bogdan Zaleski ("Zaleski"), appeals from a judgment of the Franklin County Court of Common Pleas entered December 22, 2004 in favor of appellee, Ramakant Mandalaywala ("Mandalaywala"). The order denied Zaleski a re-bid for Omnitech Electronics, Inc. ("Omnitech"). This is Zaleski's third appeal of this case.
 {¶ 2} Zaleski and Mandalaywala were the founders and sole shareholders of Omnitech. On June 14, 1996, Mandalaywala filed a complaint seeking judicial dissolution of Omnitech. The trial court appointed a receiver to oversee Omnitech and the auction of its assets. Mandalaywala and Zaleski were to be the only potential buyers. The receiver drafted a letter of intent, signed by Mandalaywala and Zaleski, to govern the terms of the auction and sale of Omnitech.
 {¶ 3} After the parties signed the agreement and unbeknownst to Zaleski, Mandalaywala met with the receiver to clarify the bidding process. During this meeting, the receiver told Mandalaywala to bid the full price of the assets and real property of Omnitech, but that he would only have to pay part of the full price because Mandalaywala already owned one-half of the real property. However, Zaleski believed that he was only to submit a bid for the portion of the assets of Omnitech and the one-half interest in real property that he did not own. As a result of the misunderstanding of the terms of the bidding process, Mandalaywala submitted the highest bid with a purchase price of $810,000. Pursuant to the terms of the letter of intent, when Zaleski realized that his bid was submitted under different conditions from the Mandalaywala bid, and Mandalaywala tendered only $510,000 to purchase the assets of Omnitech, Zaleski objected to the bid results. Zaleski's counsel notified Mandalaywala's counsel that Zaleski intended to invoke paragraph two of the letter of intent and purchase the assets. Paragraph two of the letter of intent provided as follows: Should the successful bidder fail to pay the full purchase price for the Assets within 30 days, the unsuccessful bidder shall purchase the Assets at a price equal to the unsuccessful bid, discounted by one-third to be paid in full by cash or wire transfer within 30 days thereafter.
On March 19, 1997, despite Zaleski's objection, the trial court confirmed the result of the auction in favor of Mandalaywala.
 {¶ 4} In the first appeal of this case, Mandalaywala v.Zaleski (1997), 124 Ohio App.3d 321 ("Mandalaywala I"), Zaleski raised as error, the trial court's confirmation of the results of the auction. Zaleski argued that the section of the letter of intent governing the terms of the auction was ambiguous. We determined that the trial court erred in not holding an evidentiary hearing to determine if both parties understood the terms of the auction. Furthermore, we held that, although generally, letters of intent are not considered contracts as such, "there are times when letters of intent are signed with the belief that they are letters of commitment." Id. at 334, citing Corbin on Contracts (Perillo Ed. Rev. 1993) 46, 47, Section 1.16. In this particular situation, we found that the letter of intent was a final resolution signed by Zaleski and Mandalaywala and intended to provide for the disposal of Omnitech assets and real estate.
 {¶ 5} On remand, the trial court conducted a hearing and held that there was no meeting of the minds between the parties regarding the terms of the auction and, on October 28, 1998, entered an order for a re-bid. Mandalaywala moved for reconsideration of that order. The court granted the motion for reconsideration and vacated the earlier order for a re-bid, finding that a re-bid would be impossible and unjust because Omnitech no longer existed and AccuScan had been developed by Mandalaywala in Omnitech's place. Significantly, our holding that the letter of intent was a contract and the trial court holding that there was no meeting of the minds and that Zaleski wasentitled to a re-bid, have never been withdrawn or overturned. The trial court simply held that the chosen remedy was impossible and that no just remedy could be devised.
 {¶ 6} Zaleski appealed to this court a second time, contending the trial court was erroneous in (1) vacating its decision ordering a re-bid; (2) denying Zaleski the opportunity to conduct discovery that would show a re-bid is possible; and (3) concluding that the case was moot. We sustained all three assignments of error and again remanded the case back to the trial court. In doing so, we held that the trial court erred "in light of the fact that the majority of the value paid for Omnitech was allocated to the real estate on which Omnitech was located. Clearly this property remains in existence, is claimed to be owned by the plaintiff * * * and can be readily identified and valued." Mandalaywala v. Omnitech Electronics, Inc. (Feb. 1, 2001), Franklin App. No. 00AP-263 ("MandalaywalaII").[1] Accordingly, we reversed and remanded with instructions that the trial court conduct an evidentiary hearing at which Zaleski would be permitted to present such evidence as he might discover to support his claim that assets of Omnitech have been transferred to Mandalaywala's new company, AccuScan, or have been transformed into assets of AccuScan and are traceable as such.[2] Zaleski's right to conduct full discovery was implicit in our order of remand because we had sustained all three of Zaleski's assignments of error, including his claim that the trial court had erroneously denied his right to conduct discovery.
 {¶ 7} On remand, and in conformity with our order, Zaleski attempted to conduct discovery. On April 23, 2001, he served requests for production of documents and interrogatories on Mandalaywala and AccuScan (hereafter "appellees"). Appellees continued to resist discovery. On May 8, 2001, appellees filed a motion for a protective order, arguing that they were entitled to protect confidential trade secrets from discovery. The trial court denied appellees' motion on November 20, 2001. On January 8, 2002, appellees filed their answers to Zaleski's interrogatories. However, appellees objected to many of Zaleski's requests and questions on the grounds that the documents and answers involved proprietary information and were not relevant.
 {¶ 8} On January 17, 2002, Zaleski filed another motion to compel discovery, noting that appellees' objections were in direct contravention of the trial court's previous order denying a protective order. The court declined to rule on Zaleski's motion and instead set an evidentiary hearing to determine whether the evidence sought by Zaleski was privileged or irrelevant to his claim. The trial court began the hearing on May 9, 2002. However, at the close of that day, the hearing was recessed and no new hearing date was scheduled. Five months after the May 9, 2002 hearing, Zaleski filed additional motions to compel discovery and to reschedule the evidentiary hearing.[3] On February 5, 2004, Zaleski filed a motion to compel the testimony of the court-appointed receiver.
 {¶ 9} Zaleski had asserted throughout the hearings and motions that AccuScan was a mere continuation of Omnitech and that he was entitled to discover the continued existence of AccuScan's assets to prove his theory as well as to prove that a re-bid was possible. On March 1, 2004, the trial court issued a decision denying Zaleski's several motions to compel discovery. The court determined that Mandalaywala and Zaleski bargained for the right to use the name "Omnitech," that Omnitech no longer existed, and therefore, AccuScan was not a mere continuation of Omnitech. The court reasoned that, as a result, the only relevant assets were those in existence before Mandalaywala bought Omnitech in the 1996 dissolution auction. Accordingly, the trial court denied Zaleski's motions to compel discovery and to conduct an inspection of the post-sale assets now held by AccuScan. Furthermore, the trial court ordered that Omnitech's pre-auction asset information be delivered to the receiver, who was instructed to issue a report regarding the possibility of a re-bid on the assets as they existed prior to September 26, 1996.
 {¶ 10} On May 24, 2004, Zaleski filed a motion for relief from the auction we previously had invalidated in MandalaywalaI. Zaleski contended that appellees failed to cooperate in discovery, delayed production of documents and turned over altered or incomplete documents. Zaleski further argued that Mandalaywala used Omnitech's corporate assets over Zaleski's objection and retained the revenue owed to Omnitech. Zaleski filed a second motion in which he objected to the use of the receiver to determine whether a re-bid was possible on the grounds that the receiver was biased against him.[4]
 {¶ 11} On July 27, 2004, the trial court denied Zaleski's motion for relief, finding no support for Zaleski's assertion that AccuScan assets should be included in the re-bid. The court also overruled Zaleski's objection to the receiver's role, noting that "[t]he Receiver has monitored the parties' factual discovery over the last several years, and the court is confident that the Receiver, as the court's agent, will address the pending issues with an open and unbiased mind."[5] (Decision and Entry Denying Bogdan Zaleski's Motion for Relief and Decision and Entry Overruling Bogdan Zaleski's objection to the Receiver's Role, at 2.)
 {¶ 12} The receiver filed his report with the court on November 12, 2004. The receiver opined that, based on the diminished value of Omnitech's remaining assets and the parties' changing incentives since September 1996, it would be impossible for Mandalaywala and Zaleski to be restored to their pre-bid positions. Therefore, according to the receiver, a re-bid was impossible. The trial court adopted the receiver's report in its entirety on December 22, 2004. Zaleski appealed.
 {¶ 13} Zaleski raises ten assignments of error:
1. The Trial Court erred by applying an impossible standard to determine whether a re-bid is possible by requiring: (i) that Mandalaywala and Zaleski had to be restored to the exact position and subject to the same exact conditions that existed in September, 1996; and (ii) that only the exact assets that existed in September, 1996 would be considered for a re-bid.
2. The Trial Court erred in denying Zaleski full discovery from Mandalaywala, AccuScan and the Receiver to trace the assets of Omnitech that were used, consumed, and/or sold by Mandalaywala and/or AccuScan.
3. The Trial Court erred in denying Zaleski full discovery from Mandalaywala, AccuScan and the Receiver to demonstrate that AccuScan is the "mere continuation" of Omnitech.
4. The Trial Court erred in not finding that AccuScan is the "mere continuation" of Omnitech.
5. The Trial Court erred by failing to fashion an equitable remedy as an alternative to a re-bid.
6. The Trial Court erred in denying Zaleski full discovery from Mandalaywala and AccuScan in order to fashion an equitable remedy as an alternative to a re-bid.
7. The Trial Court erred in denying Zaleski full discovery from Mandalaywala and AccuScan in order to determine the value of Zaleski's claims against Mandalaywala and AccuScan for their use and consumption of the Omnitech assets since September, 1996.
8. The Trial Court erred by failing to consider Zaleski's damage claims against Mandalaywala and AccuScan for their use and consumption of Omnitech assets since September, 1996.
9. The Trial Court erred in not restoring the title to the Real Estate to Mandalaywala and Zaleski.
10. The Trial Court erred in denying Zaleski's motion for money damages for lost rent.
 {¶ 14} We first consider assignments of error two, three, six, and seven. All four assignments of error allege that the trial court erred by denying Zaleski an opportunity to conduct full discovery to determine what assets of Omnitech were traceable to assets held by AccuScan. Appellees counter that the trial court has discretion to regulate discovery and the decisions regulating discovery were within that court's discretion.
 {¶ 15} Ordinarily, we review issues of discovery under an abuse of discretion standard. Absent an abuse of discretion, an appellate court will uphold a lower court determination on discovery issues. State ex rel. The V Cos. v. Marshall (1998),81 Ohio St.3d 467. An abuse of discretion is a decision deemed unreasonable, arbitrary, or unconscionable. Id.
 {¶ 16} However, in this appeal, our review is not based on the abuse of discretion standard. Once the second assignment of error was sustained in Mandalaywala II and the case was remanded for further proceedings, including the requirement that Zaleski be allowed to conduct discovery, that order was to be carried out by the lower court. It appears that the trial court misapprehended our order of remand because the trial court did not allow Zaleski to conduct discovery to determine whether AccuScan was a continuation of Omnitech. In this, the trial court committed error.
 {¶ 17} Appellees' concerns that Zaleski's discovery requests may involve intellectual property are misplaced. There is a distinct possibility that much of the intellectual property claimed by AccuScan may have originated from Omnitech, including intellectual property held by that original company. Therefore, those assets may not be unique to AccuScan. Absent full and unobstructed discovery, neither this court nor the trial court can adequately determine which assets should be protected as exclusive property of AccuScan and which assets should be made available for re-bid by Zaleski. We have already determined Zaleski is entitled to a re-bid. The remaining question is upon which assets the re-bid will be held.
 {¶ 18} In his second assignment of error, Zaleski asserts that he was denied an opportunity to trace the Omnitech assets or proceeds of those assets that may have been used by Mandalaywala for the benefit of AccuScan. As noted above, Zaleski was denied his right to conduct discovery in his attempt to trace the assets of Omnitech. We find that the order of the trial court which permitted Zaleski to discover only those assets held by Omnitech before the sale was erroneous and contrary to our holding in Zaleski's second appeal, Mandalaywala II, supra. By limiting Zaleski's discovery only to those assets that existed until the date of the auction, the trial court failed to follow our previous ruling that Zaleski was entitled to full discovery.
 {¶ 19} Appellees argue that Zaleski is "only seeking discovery of Omnitech assets that have been used, consumed or sold" and that, by seeking such information, Zaleski is only interested in the assets and products of AccuScan. (Appellees' brief, at 14.) Based upon the record, we disagree. Zaleski submitted to the trial court a list of Omnitech assets that he believed were still in existence or had been incorporated into the assets of AccuScan.
 {¶ 20} Furthermore, it appears that appellees' contention that AccuScan is a completely separate entity, unconnected to the former Omnitech, may well be unrealistic. However, on the record before us, we cannot determine whether AccuScan is a separate entity or a mere continuation of Omnitech. Without full discovery, Zaleski has been deprived of his rightful opportunity to prove his case.
 {¶ 21} Appellees also argue that full discovery will endanger their intellectual property rights. Appellees' desire to protect intellectual property is understandable. However, as in many cases involving intellectual property, those rights can be protected through non-disclosure agreements, court orders or a combination of the two as may be deemed necessary.
 {¶ 22} Because Zaleski was entitled to complete discovery to enable him to pursue his theory that assets of AccuScan were derived from assets of Omnitech, the trial court erred in restricting that discovery. Therefore, we find Zaleski's second assignment of error well-taken.
 {¶ 23} Zaleski's third assignment of error parallels his second assignment of error. Zaleski objects to the trial court's denial of his right to conduct discovery intended to show that AccuScan is an ongoing concern or a mere continuation of Omnitech. It is Zaleski's contention that AccuScan is a mere continuation of Omnitech, operating out of the same facilities, with the same product line, same employees, and same customers. Appellees argue that AccuScan has no liability to Zaleski because, under the facts of this case, the "mere continuation" theory of successor liability has no application.
 {¶ 24} Liability of a successor entity as a "mere continuation" of a predecessor entity is a theory of liability in transactions involving asset purchases. Under the general rule, a successor corporation is not responsible for the liabilities of its predecessor. Flaugher v. Cone Automatic Mach. Co. (1987),30 Ohio St.3d 60. However, Flaugher laid out four exceptions to the general rule:
(1) the buyer expressly or impliedly agrees to assume such liability;
(2) the transaction amounts to a de facto consolidation or merger;
(3) the buyer corporation is merely a continuation of the seller corporation; or
(4) the transaction is entered into fraudulently for the purpose of escaping liability.
Id. at 62. Under the third exception, a successor corporation may be held responsible for the liabilities of its predecessor if the successor is found to be a mere continuation.
 {¶ 25} Relying on Flaugher, appellees argue that the mere continuation exception to the general rule of non-liability of a successor corporation has traditionally been applied to tort liability claims and that courts have been reluctant to expand that theory to cases involving contractual liability. Therefore, appellees reason, the mere continuation theory should not be applied in this case.
 {¶ 26} In Flaugher, the court did exhibit a reluctance to expand the continuation theory to contractual liability. However, in Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, a contract liability case, the Ohio Supreme Court defined the mere continuation exception and its application to cases involving contractual liability:
* * * A court-imposed expansion of contractual liability of successor corporations beyond the traditional exceptions would unnecessarily chill the marketplace of corporate acquisitions. For these reasons, we decline to expand the traditional exceptions to the general rule of nonliability of successor corporations, and hold that a corporation that purchases the assets of another corporation is not liable for the contractualliabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3)the buyer corporation is merely a continuation of the sellercorporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.
Id. at 349. (Emphasis added.) Thus, under certain circumstances, a successor corporation may be held liable for the contractual liabilities of its predecessor. Accordingly, it is necessary to determine whether appellees were under any contractual obligation to Zaleski that would flow through to AccuScan.
 {¶ 27} Appellees did not expressly assume any liabilities of Omnitech in the letter of intent between the parties.[6]
However, it is still possible that liabilities were created as a result of the letter of intent and the actions of the parties regarding the auction of Omnitech assets. In pertinent part, the letter of intent states as follows:
1. The successful bidder has 30 days from September 26, 1996, to arrange financing and to pay the purchase price for all the assets of Omnitech Electronics, Inc. * * * in cash or wire transfer[.]
2. Should the successful bidder fail to pay the full purchase price for the Assets within 30 days, the unsuccessful bidder shall purchase the Assets at a price equal to the unsuccessful bid, discounted by one-third to be paid in full by cash or wire transfer within 30 days thereafter.
We have found that the letter of intent was a contract. Therefore, under paragraph two of the letter of intent, appellees were under a contractual duty to either tender the full price or allow Zaleski to purchase the assets for a discounted price. Mandalaywala failed to tender the full $810,000 of his winning bid, instead tendering only $510,000. However, Zaleski was denied the opportunity to purchase the assets at a discounted price. Furthermore, despite the trial court's original order for a re-bid, the subsequent withdrawal of the re-bid order based upon the court's finding that a re-bid was impossible, denied Zaleski the opportunity for the remedy of a re-bid. Appellees have a contractual obligation to Zaleski. With that contractual obligation comes the possibility that, if Zaleski can demonstrate that AccuScan is a mere continuation of Omnitech, AccuScan may be liable to Zaleski.
 {¶ 28} Appellees also argue that, even if the mere continuation exception applies to contractual obligations, it does not apply to the underlying facts of this case. In support of their argument, appellees state that there are two distinct manifestations of the mere continuation exception to the rule of non-liability of a successor corporation: traditional and expanded. As set out in Welco, in the traditional application of the mere continuation exception, both the predecessor and the successor corporations have common ownership and the successor is simply a recreation of the predecessor for the purpose of continuing the corporate entity rather than just the business operation. Under this approach, it must be determined whether the predecessor is simply a reincarnation of the successor. SeeWelco, at 350.
 {¶ 29} Appellees argue that, under the expanded application of the mere continuation exception, courts look to significant similarities and continuity between the predecessor and the successor to determine whether the successor is the mere continuation of the predecessor even though there is no discernable common ownership. The Ohio Supreme Court noted inFlaugher that many jurisdictions have expanded the liability of successor corporations in situations where similarities between the successor and predecessor were so significant that "no basis exists for treating a purchase of assets differently from a defacto merger." Flaugher, at 65. However, in Flaugher, the Ohio Supreme Court neither adopted nor rejected those expanded views of successor liability; instead, the court held that these expanded theories did not apply to the facts of that case.
 {¶ 30} In Welco, the issue facing the court was the liability of a successor corporation for the contractual obligations of the predecessor. The court declined to expand the traditional theory of successor liability beyond the strict confines of the four exceptions laid out in Flaugher. The court did so because:
[c]ourts would be forced to look beyond the surface of any asset purchase to determine the extent of shared features between predecessor and successor in order to decide whether liability should attach to contractual obligations that were explicitly excluded from the transaction. * * * A court-imposed expansion of contractual liability of successor corporations beyond the traditional exceptions would unnecessarily chill the marketplace of corporate acquisitions. * * *
Id. at 348-349. The court noted its "concern for the predictability and free transferability in corporate transactions." Id. However, although Welco declined to find successor liability under the facts of that case, the Ohio Supreme Court did indicate that, under appropriate facts, a successor corporation might be liable for the contracts of a predecessor if one or more of the exceptions set out inFlaugher were shown.
 {¶ 31} This case is factually distinguishable from Welco.Welco involved a purchase of assets by a corporation unrelated to the seller corporation. In Welco, the issue was "whether a stranger corporation that purchases the assets of another corporation may be held liable for the unassumed contractual obligations of the predecessor under a theory of successor liability." Id. at 346. In contrast to the situation in Welco,
here, the contractual obligation at issue was a product of the transaction itself, and was created by the parties' letter of intent, the dissolution of the predecessor, and the subsequent creation of the successor corporation. This case does not involve an arm's length transaction between two strangers resulting in corporations with new and different ownership for which "free transferability and predictability" is a concern. CompareWelco, at 348.
 {¶ 32} Appellees rely on Hunt v. Waterbury Farrel Mfg. Ltd.
(Dec. 6, 1996), Darke App. No. 1409, in support of their view that a successor cannot be held liable for the contracts of a predecessor. In Hunt, a products liability case, the court declined to find liability in the successor corporation because of the lack of continuity between the predecessor and successor corporations. Hunt is not helpful to our analysis.
 {¶ 33} Appellees also contend that the exceptions to successor non-liability do not apply in this case because Omnitech and AccuScan do not have the same ownership and Omnitech still exists. (Appellees' brief, at 24.) This contention is not supported by the facts on two points. First, at least to some extent, Omnitech and AccuScan do share common ownership. Mandalaywala was a 50 percent owner of Omnitech, purchased all of Omnitech's assets, and then created AccuScan which he owns. Second, Omnitech clearly no longer exists. Our opinion inMandalaywala II recognized the fact that Omnitech no longer exists. The trial court stated in its March 1, 2004 opinion that Omnitech no longer exists. Therefore, we disagree with appellees' argument that Omnitech continues to exist today.
 {¶ 34} Established law does not prohibit the application of the mere continuation exception to contractual disputes. There is no legal reason why the mere continuation exception to the general rule of non-liability of a successor entity cannot be applied in this case. However, based upon the limited record available to us, we are unable to determine whether AccuScan is, in fact, a mere continuation of Omnitech. This limited record may be because Zaleski was precluded from conducting full discovery to attempt to prove that AccuScan is the mere continuation of Omnitech. Zaleski must be allowed to conduct discovery consistent with his theory that the assets of AccuScan were originally assets of Omnitech or are an evolutionary result of the use of Omnitech assets. Only through discovery will Zaleski and the court be able to determine whether and to what extent AccuScan is a mere continuation of Omnitech. It may be that discovery will not produce any evidence to support Zaleski's position. However, he has the right to attempt to prove his case. Accordingly, we find Zaleski's third assignment of error well-taken.
 {¶ 35} In his sixth and seventh assignments of error, Zaleski contends the trial court erred in denying him full discovery to fashion an alternative remedy and to determine the value of his claims against appellees for their use of Omnitech's assets after September 1996. We have already determined that Zaleski was denied full discovery by the trial court. We have sustained Zaleski's second and third assignments of error. Once Zaleski is allowed full discovery, he will have the opportunity to propose an alternative remedy and to value AccuScan's consumption of Omnitech's assets after Mandalaywala bought AccuScan. Therefore, we find Zaleski's sixth and seventh assignments of error well-taken.
 {¶ 36} Zaleski's second, third, sixth and seventh assignments of error are sustained. Based upon the foregoing, all issues Zaleski raises regarding other determinations by the trial court are deemed premature. The judgment of the trial court is reversed and this case is remanded to that court for further proceedings consistent with this opinion.
Judgment reversed and remanded.
Petree and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Mandalaywala allocated three-quarters of the bid price to the real estate. Mandalaywala is still in possession of the property, which now houses AccuScan. Thus, a significant part of Omnitech still remains and is available for a re-bid.
[2] Upon winning the auction, Mandalaywala changed the name of Omnitech to Accuscan. However, Accuscan is housed in the same facilities as Omnitech, produces the same and similar products, and has the same employees, same phone numbers, and same customers.
[3] Zaleski filed a motion to reschedule the hearing and to order the plaintiff to produce documents on October 15, 2002. He filed a renewed motion to reschedule the hearing and to compel discovery on December 6, 2002. Following this second motion, the trial court rescheduled and held evidentiary hearings on March 10, 2003, March 19, 2003, April 17, 2003 and June 26, 2003. On August 20, 2003, Zaleski filed a renewed motion to compel discovery, compel inspections and to recover attorneys' fees and costs. Before the trial court rendered a decision on Zaleski's motions to compel discovery, it conducted two more hearings on September 4, 2003 and December 17, 2003.
[4] Zaleski based his objections to the receiver on three reasons: (1) that the issues were beyond the scope of the receiver's appointment, (2) the receiver demonstrated his opposition to Zaleski's position in the case by asserting that a re-bid was impossible and that Zaleski's case was moot, and (3) the receiver was involved in the underlying problem of the invalid sale of Omnitech to Mandalaywala.
[5] There has never been a determination that the receiver is biased, that he intentionally had a secret meeting with Mandalaywala, or that he acted improperly in any other way throughout the course of these proceedings.
[6] Pursuant to the letter of intent, "the parties shall cooperate in the dissolution of the corporation, including the satisfaction of all corporation's liabilities prior to liquidation[.]" (Letter of Intent, at ¶ 4.)