[Cite as *Advantage Bank v. Waldo Pub., L.L.C.*, 2009-Ohio-2816.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY


ADVANTAGE BANK,                                    CASE NO. 9-08-67

    PLAINTIFF-APPELLEE,

    v.

WALDO PUB, LLC, ET AL.,                            O P I N I O N

    DEFENDANTS-APPELLEES,

    -and-

WENDI REICHARDT, ET AL.,

    DEFENDANTS-APPELLANTS.


Appeal from Marion County Common Pleas Court
Trial Court No. 07CV0567

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  June 15, 2009


APPEARANCES:

    *Cheryl L. Jennings* for Appellant

    *Timothy Rankin* for Appellee, Advantage Bank

    *James M. Dietz* for Appellee, Olde Oaks, Inc.

*A.C. Strip* **for Appellee, Waldo Pub, LLC**

**PRESTON, P.J.**

{¶1} Appellants, Wendi Reichardt (hereinafter "Reichardt") and Reichardt Investments, LLC (hereinafter "RI"), appeal the Marion County Court of Common Pleas' judgment denying their Civ.R. 60(B) motion and judgment of contempt for their failure to abide by the court's order confirming sale. For the reasons that follow, we affirm in part and reverse in part.

{¶2} In May of 2007, Reichardt attempted to purchase the business and real estate owned by Waldo Pub, LLC; however, the deal was not approved by one of Waldo Pub's lien holders and was not completed. (Nov. 14, 2008 JE, Doc. No. 82, FOF #3).

{¶3} On July 2, 2007, plaintiff-appellee Advantage Bank (hereinafter "Advantage"), filed a cognovit complaint against defendants Waldo Pub, LLC, 294 South Main, LLC, Terry L. Musick, and Belinda H. Musick in the Marion County Court of Common Pleas. (Doc. No. 1). The complaint alleged that defendants defaulted on a promissory note executed in favor of Advantage. (Id.). On that same day, defendants filed an answer confessing judgment for Advantage, and the trial court granted judgment for Advantage on the note. (Doc. Nos. 2, 4)

{¶4} On July 6, 2007,[1] Reichardt formed RI with the intention of purchasing the business and real estate formerly operated by Waldo Pub, LLC. (Nov. 14, 2008 JE, Doc. No. 82, FOF # 1); (Ex. 8).

{¶5} On August 31, 2007, Advantage filed a motion for the immediate appointment of a receiver pursuant to R.C. 2735.01 over all of the assets owned by the judgment-debtor-defendants. (Doc. No. 14). In its attached memorandum, Advantage recommended that Martin Management Services, Inc. (hereinafter "receiver") be appointed as receiver, and that the receiver be permitted to employ the law firm of Strip, Hoppers, Leithart, McGrath, & Terlecky Co. LPA as counsel. (Id.). That same day, the trial court ordered that the receiver recommended by Advantage be appointed and authorized the hire of counsel from the recommended law firm. (Doc. No. 15).

{¶6} On or about September 19, 2007, RI signed a management agreement with the receiver to operate the business formerly known as Waldo Pub. (Nov. 14, 2008 JE, Doc. No. 82, FOF #4); (Doc. No. 42 at 2). In September 2007, Reichardt made an application with the Citizens Banking Co., later known as Champaign Bank, to obtain a $100,000 loan to purchase the business. Reichardt planned on obtaining an additional loan from a family member. (Nov. 14, 2008 JE, Doc. No. 82, FOF #5).

---

[1] The Court notes that the date in the trial court's Nov. 14, 2008 JE is July 7, 2007; however, the date provided in Ex. 8, the Certificate of Registration, indicates July 6, 2007. We elect to use the date found on the Certificate.

{¶7} On October 17, 2007, the receiver filed an inventory and appraisal valuing the tangible assets of the judgment-debtors at $174,941.00. (Doc. No. 20). On October 26, 2007, the receiver filed a motion to join Olde Oaks, Inc. on the basis of their interest in the real estate owned by 294 South Main, LLC by virtue of a mortgage in its favor and a UCC-1 statement, both filed August 12, 2005. (Doc. No. 21). On November 1, 2007, the trial court ordered that Olde Oaks be joined as a party-defendant. (Doc. No. 22).

{¶8} On November 2, 2007, the receiver filed a motion for authority to conduct a receiver sale pursuant to R.C. 2735.04. (Doc. No. 23). On November 26, 2007, Olde Oaks filed a motion in opposition to receiver's motion to conduct a sale, specifically requesting a hearing on the receiver's expected administrative priority. (Doc. No. 26). On November 30, 2007, attorney Susan Bruder filed a notice of appearance on behalf of RI. (Doc. No. 27). A hearing was held on the receiver's motion on December 11, 2007, and, on December 18th, the trial court granted the receiver's motion in part and denied it in part. (Doc. No. 29). In its order, the trial court postponed the sale date thirty (30) days so that the receiver could consider documentation submitted by Reichardt and RI, which they believed entitled them to a bid credit at the public sale. (Id.). The trial court ordered that the receiver submit a recommendation. (Id.).

{¶9} On December 26, 2007, the receiver filed a motion for order approving terms of a rescheduled public sale. (Doc. No. 30). The receiver

recommended that: RI be given a bid credit of $17,214.78 for its documented fixed improvements to the assets; if RI was not the successful bidder at public auction that it be paid said amount as an administrative expense of the receiver; RI be given administrative priority on said amount; that certain tangible property on the premises owned by RI be excluded from the sale; that the minimum sale bid be lowered to $192,000; and that all prospective bidders deposit with the receiver a refundable deposit of $17,000.00 seven days prior to the sale date. (Id.). Attached to the receiver's recommendation and memorandum in support were receipts documenting Reichardt's and RI's expenses and improvement costs. (Id.).

{¶10} On December 31, 2007, RI filed a response to the receiver's recommendation seeking an additional credit of $12,936.07, for a total credit of $30,150.85, for items and expenses unaccounted for in the receiver's recommendation. (Doc. No. 31). On that same day, Olde Oaks filed a memorandum in opposition to the receiver's recommendation that RI be given a bid credit. (Doc. No. 32). On January 9, 2008, the trial court approved the receiver's terms of rescheduled public sale and rejected RI's memo seeking additional credit and Olde Oaks' memo seeking no bid credit for RI. (Doc. No. 33).

{¶11} A notice of receiver's sale was filed on January 24, 2008, notifying the trial court that the sale would be conducted on February 25, 2008. (Doc. No. 34). On March 6, 2008, the receiver filed a report of the sale and a motion for

confirmation of the sale. (Doc. No. 35). The report indicated that: RI and Jeff Hardacre were present at the public sale; RI made an opening bid of $192,000.00 but was ultimately outbid by Hardacre; and that Hardacre submitted the highest bid of $225,000.00. (Id.). The report also disclosed that, after the conclusion of the sale, Hardacre questioned whether the food and beverage inventory at the premises was part of the deal. (Id.). The receiver informed Hardacre that the food and beverage inventory belonged to RI; and thus, the inventory was not an asset of the receivership and not part of the deal. (Id.).

{¶12} On March 24, 2008, Hardacre filed a response to the receiver's report of sale and motion for confirmation of sale seeking clarification on whether the food and beverage inventory was included in the sale, according to the terms of the sale as advertised. (Doc. No. 37). On that same day, Olde Oaks filed a response to the report objecting to the payment of $15,000 to the receiver without any documentation of its expenses. (Doc. No. 38).

{¶13} On March 26, 2008, the receiver filed notice with the court of its intention to file an application for approval of fees and costs in response to Olde Oaks. (Doc. No. 39). On March 31, 2008, the receiver filed a reply to Hardacre's response alleging that it could not convey the food and beverage inventory since no such inventory existed at the outset of the receivership. (Doc. No. 40). As such, the receiver asked the court to confirm the sale and order Hardacre to proceed or forfeit his deposit. (Id.).

**{¶14}** On April 3, 2008, the trial court set the matter for hearing. (Doc. No. 41). A status hearing was held on April 25, 2008, but was not officially recorded. (Nov. 14, 2008 JE, Doc. No. 82, FOF ##8-9). At the hearing, counsel for Hardacre informed the court that he was not sure if Hardacre wished to proceed with the sale. (Id., FOF #10). Attorney Bruder stated that RI was willing to proceed with the purchase in the amount of $224,000.00, its final bid at the sale, if Hardacre did not wish to proceed with his bid of $225,000.00. (Id., FOF #11).

**{¶15}** On April 29, 2008, Hardacre filed a status report wherein he alleged that: his original objection regarding the food and beverage inventory was settled between the parties; following the February 25, 2008 sale, however, RI ceased operations of the bar/restaurant in breach of its management agreement with the receiver; that RI's actions have negatively impacted the value of the bar/restaurant; and that the receiver is now unable to transfer the intangible asset of good will of an existing business to him. (Doc. No. 42). Hardacre proposed that the trial court confirm sale to him in the amount of $225,000.00, but deduct RI's $17,214.78 administrative lien as damages due to its breach of the management agreement. (Id.).

**{¶16}** On May 2, 2008, the receiver filed a status report recommending that the trial court confirm the sale either to Hardacre for $225,000.000 or to RI for $224,000.00. (Doc. No. 43).

{¶17} On May 27, 2008, the trial court filed its order confirming sale. (Doc. No. 46). The trial court found that Hardacre was not willing to close on the sale for his bid of $225,000.00, because the receiver was unable to convey both the food and liquor inventory and RI closed the bar/restaurant operation. (Id.). The trial court found that under the terms of the sale, the second highest bidder could proceed with their offer if the highest bidder did not close, and that RI indicated a willingness to proceed to closing at its bid of $224,000.00. (Id.). Under the circumstances, the trial court also found that Hardacre was entitled to a release of his deposit. (Id.). The trial court then ordered that the assets of Waldo Pub, LLC and 294 South Main, LLC or its assigns be transferred to RI for $224,000.00. (Id.). The trial court ordered that RI be given an administrative priority of $17,214.78 as previously ordered, and that the purchaser shall tender to the receiver, or its agent, the remaining purchase price balance, plus closing costs, within thirty (30) days. (Id.).

{¶18} On July 2, 2008, Attorney Bruder filed a motion to withdraw as counsel for RI per their request, which the trial court granted on July 9, 2008. (Doc. Nos. 54, 58).

{¶19} On July 3, 2008, the receiver filed a report informing the trial court that RI had sent notice of its intention not to close on the sale. (Doc. No. 55). On that same day, the receiver also filed a motion for hearing to show cause why

Reichardt and RI should not be held in contempt of the trial court's order to close on the sale. (Doc. No. 56).

{¶20} On July 15, 2008, the trial court granted the motion and set the matter for a hearing on September 8, 2008. (Doc. No. 59). On August 15, 2008, Reichardt and RI filed a motion to continue the hearing, but the trial court overruled the motion. (Doc. Nos. 63, 65). On August 22, 2008, a process server was appointed by the trial court to serve copies of the hearing notices upon Reichardt and RI. (Doc. Nos. 67-68). The trial court held hearings on the receiver's motion to show cause on September 19, 2008 and October 27, 2008. (Doc. Nos. 75, 76).

{¶21} On October 29, 2008, RI filed a Civ.R. 60(B) motion for relief from the trial court's May 27, 2008 order confirming sale. (Doc. No. 78)

{¶22} On November 14, 2008, the trial court overruled RI's Civ.R. 60(B) motion. (Doc. No. 81). On that same day, the trial court issued judgment, along with findings of fact and conclusions of law, finding Reichardt and RI in contempt of court for failing to close on the sale as ordered on May 27, 2008. (Doc. No. 82-83). The trial court found that Reichardt and RI should be liable for the difference between their bid of $224,000.00 and the proceeds of any subsequent sale. (Id.). The trial court also ordered that Reichardt and RI should be liable for the receiver's fees and services after March 26, 2008, and that they should forfeit the $17,000 bid credit/administrative lien previously granted by the court. (Id.).

{¶23} On December 11, 2008, Reichardt and RI filed a notice of appeal from the trial court's judgments denying their Civ.R. 60(B) motion and judgment finding them in contempt. (Doc. No. 85). Reichardt and RI now appeal raising four assignments of error for our review. Appellants' assignments of error can be separated by party: assignments of error one and three pertain to appellant Reichardt; and, assignments of error two and four pertain to appellant RI. We will address the assignments of error by party, beginning with Reichardt.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT LACKED SUBJECT MATTER AND/OR PERSONAL JURISDICTION OVER WENDI REICHARDT.**

{¶24} In Reichardt's first assignment of error, she argues that the trial court lacked subject matter jurisdiction and personal jurisdiction to hold her in contempt individually. Reichardt argues that the trial court lacked both personal jurisdiction over her and subject matter jurisdiction because she was never a party to the proceedings or the court's order confirming sale. We disagree.

{¶25} Whether a trial court has subject matter and personal jurisdiction over a defendant is a question of law reviewed de novo. *National City Bank v. Yevu*, 178 Ohio App.3d 382, 2008-Ohio-4715, 898 N.E.2d 52, ¶6 (personal jurisdiction); *CommuniCare Health Servs., Inc. v. Murvine*, 9th Dist. No. 23557, 2007-Ohio-4651, ¶13 (personal and subject matter jurisdiction), citing *State v. Walls* (Dec. 11, 2000), 12th Dist. No. CA99-10-174, at *2; *Robinson v. Koch Ref.*

*Co.* (June 17, 1999), 10th Dist. No. 98AP-900, at * 1. When determining a question of law de novo, this Court may substitute, without deference, its judgment for that of the trial court. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

{¶26} A court acquires personal jurisdiction over a defendant in one of three ways: (1) proper and effective service of process; (2) voluntary appearance by the party; or (3) limited acts by the party or his counsel that involuntarily submit him to the court's jurisdiction. *Money Tree Loan Co. v. Williams*, 169 Ohio App.3d 336, 2006-Ohio-5568, 862 N.E.2d 885, ¶8, citing *Austin v. Payne* (1995), 107 Ohio App.3d 818, 821, 669 N.E.2d 543, citing *Maryhew v. Yova* (1984), 11 Ohio St.3d 154, 156, 464 N.E.2d 538. "A trial court lacks jurisdiction to render a judgment against a defendant if effective service of process has not been made on the defendant and the defendant has not appeared in the case or waived service." Id., citing *Bowling v. Grange Mut. Cas. Co.*, 10th Dist. No. 05AP-51, 2005-Ohio-5924, citing *Rite Rug Co., Inc. v. Wilson* (1995), 106 Ohio App.3d 59, 62, 665 N.E.2d 260.

{¶27} Initially, we note that the record herein indicates that both RI and Reichardt had notice of the contempt hearing. Counsel for Reichardt and RI was served with a copy of the receiver's July 3, 2008 report indicating that it intended to file a motion to show cause why Reichardt and RI should not be held in contempt of the court's May 27, 2008 order confirming sale. (Doc. No. 55).

Reichardt and RI were named in the receiver's motion for a show cause hearing, and this motion was served upon counsel for Reichardt and RI. (Doc. No. 56). The trial court's hearing notice also specifically provided that: "[t]his matter came before the Court upon consideration of Receiver's Motion for Hearing to Show Cause Why Wendi Reichardt and Reichardt Investments, LLC Should Not be Held in Contempt of Court for Violation of Court Order. The Court finds this matter should be set for hearing." (Doc. No. 59). The trial court's hearing notices also indicate that both Reichardt and RI were served copies of the notice. (Id.); (Doc. Nos. 60, 76).

{¶28} Furthermore, the record indicates that Reichardt appeared and argued the merits of her case before the trial court without objecting to the court's lack of personal jurisdiction at the first opportunity. A party's failure to object to the trial court's lack of personal jurisdiction at its first appearance in the case, waives the issue on appeal. *McBride v. Coble Express, Inc.* (1993), 92 Ohio App.3d 505, 510, 636 N.E.2d 356; *Columbus Homes Ltd. v. S.A.R. Constr. Co.*, 10th Dist. Nos. 06AP-759, 06AP-760, 2007-Ohio-1702, ¶44 ("Where a defendant appears and participates in the case without objection, he waives the defense of lack of personal jurisdiction due to failure of service."). On August 15, 2008, Reichardt and RI filed a motion to continue the contempt hearing because Reichardt had a previously scheduled vacation. (Doc. No. 63). On that same day, Attorney David J. Gordon entered an appearance on behalf of "Wendi Reichardt

and Reichardt Investments, LLC." (Doc. No. 64). Reichardt was present for both contempt hearings but did not raise the issue of personal jurisdiction. (Sept. 19, 2008 Tr. at 6-8); (Oct. 27, 2008 Tr. at 6-7). At the second contempt hearing, counsel moved to dismiss Reichardt as a party to the proceedings alleging that she could not be held personally liable since there was no evidence that she committed fraud. Noticeably missing from counsel's argument, however, is any assertion that the court lacked personal jurisdiction over Reichardt. (Oct. 27, 2008 Tr. at 6-7). Accordingly, Reichardt has waived this issue for appeal purposes. *McBride*, 92 Ohio App.3d at 510; *Columbus Homes Ltd.*, 2007-Ohio-1702, at ¶44.

{¶29} For these reasons, we find that that the trial court had personal jurisdiction over Reichardt.

{¶30} Reichardt also argues that the trial court lacked subject matter and personal jurisdiction to hold her in contempt because the court ordered RI, not her, to close on the sale. Reichardt further asserts that she cannot be held in contempt for failing to perform an act which she was not ordered to perform. We disagree.

{¶31} As an initial matter, the trial court had subject matter jurisdiction over the contempt proceeding since it arose from a court-ordered judicial sale. The sale at issue here was conducted by a receiver. Receivers are court-appointed ministerial officers who take charge of assets for the purpose of conserving them to the ends of equity or for the benefit of creditors. 80 Ohio Jurisprudence 3d Receivers, Section 4, citing *INF Ent. Inc. v. Donnellon* (1999), 133 Ohio App.3d

787, 729 N.E.2d 1221; *Forest City Inv. Co. v. Haas* (1924), 110 Ohio St. 188, 143 N.E. 549; *McGuiness v. U.S., I.R.S.* (C.A. 6, 1999), 90 F.3d 143; *Castlebrook, Ltd.*, 78 Ohio App.3d 340. Since they are authorized by the court, receiver sales are considered judicial sales governed by the same general rules and statutes as judicial sales, subject to certain exceptions. 80 Ohio Jurisprudence 3d Receivers, Section 113, citing *Bloomberg v. Roach* (1930), 43 Ohio App.178, 182 N.E. 891. A court, proceeding in equity to a receiver sale, may punish for contempt a purchaser who refuses without reason to complete the purchase according to the sale terms when he/she is able to do so. 80 Ohio Jurisprudence 3d Receivers, Section 126, citing 64 Ohio Jurisprudence 3d Judicial Sales, Section 144; *Bloomberg*, 43 Ohio App.178; *Pierce v. Egbert* (May 22, 1933), 1st Dist. No. 576. Likewise, R.C. 2329.30 provides:

> **The court from which an execution or order of sale issues, upon notice and motion of the officer who makes the sale or of an interested party, may punish any purchaser of lands and tenements who fails to pay within thirty days of the confirmation of the sale the balance due on the purchase price of the lands and tenements by forfeiting the sale of the lands and tenements and returning any deposit paid in connection with the sale of the lands and tenements, by forfeiting any deposit paid in connection with the sale of the lands and tenements, as for contempt, or in any other manner the court considers appropriate.**

Accordingly, the trial court had subject matter jurisdiction since it proceeded within its statutory and equitable authority to hold the purchaser, RI, in contempt for failing to purchase the property. Aside from that, a court of common pleas has

statutory and inherent authority to enforce its orders through contempt. R.C. 2705.02; *Burt v. Dodge* (1992), 65 Ohio St.3d 34, 35, 599 N.E.2d 693.

**{¶32}** Furthermore, the trial court had jurisdiction to find Reichardt in contempt individually if it found that she had knowledge of the trial court's order *and* encouraged or participated in violating the order. As the U.S. Supreme Court noted almost one hundred years ago:

> **A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.**

*Wilson v. U.S.* (1911), 221 U.S. 361, 376, 31 S.Ct. 538, 55 L.Ed. 771. Although this rule has been typically applied in the context of criminal contempt proceedings, it has been also applied in civil contempt proceedings. See, e.g., 17 American Jurisprudence 2d Contempt, Section 48, citing *Ex Parte Chambers* (Tex. 1999), 38 Tex.Sup.Ct.J. 448, 898 S.W.2d 257; *Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Electrical Serv. Co.* (C.A.6, 2003), 340 F.3d 373, 382 (district court could hold corporate officer in contempt of court's order regardless of whether the officer was named defendant in the order); *U.S. v. Hochschild* (C.A.6, 1992), 977 F.2d 208, 211, citing *Backo v. Local 281, United Bhd. of Carpenters & Joiners* (C.A.2, 1970), 438 F.2d 176 and *N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO* (C.A.9, 1977), 568 F.2d 628

(allowing personal jurisdiction for contempt over corporate officers and employees if they had notice of injunction and its contents); *Chicago Truck Drivers v. Brotherhood Labor Leasing* (C.A.8, 2000), 207 F.3d 500, 507 (corporate officer can be held in contempt personally for corporation's failure to follow court order even if not named in the order); *Peterson v. Highland Music, Inc.* (C.A.9, 1998), 140 F.3d 1313 (non-party corporate president can be held in contempt personally); *Colonial Williamsburg Foundation v. Kittinger Co.* (C.A.4, 1994), 38 F.3d 133, 136-37 (corporation's board chairman can be held in contempt for corporation's violation of consent judgment and discovery order); *N.L.R.B. v. Maine Caterers* (C.A.1, 1984), 732 F.2d 689; *Singer Mfg. Co. v. Sun Vacuum Stores, Inc.* (D.C. N.J., 1961), 192 F. Supp. 738; *Anderson Dundee 53 L.L.C. v. Terzakis* (2005), 363 Ill.App.3d 145, 157, 841 N.E.2d 6 (court had jurisdiction to find corporate officers in contempt and fine them $2500 each day that the corporation failed to turn over funds to a receiver as ordered); *Fargo Women's Health Organization, Inc. v. Larson* (N. Dakota, 1986), 391 N.W.2d 627; *Department of Revenue v. Carpet Warehouse, Inc.* (1984), 296 Or. 400, 676 P.2d 299; *Milano v. Hingham Sportswear Co.*, Inc. (1974), 366 Mass. 376, 318 N.E.2d 827; *Sound Storm Enterprises, Inc. v. Keefe* (Iowa 1973), 209 N.W.2d 560; *City of Scranton v. Peoples Coal Co.* (1922), 274 Pa. 63, 117 A. 673. Accordingly, the trial court had subject matter and personal jurisdiction to find Reichardt in contempt individually for RI's failure to comply with the court's order.

**{¶33}** Reichardt's first assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT'S 11/14/08 DECISION TO FIND AND HOLD WENDI REICHARDT IN CONTEMPT WAS CONTRARY TO OHIO LAW, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.**

**{¶34}** In Reichardt's third assignment of error, she argues that the trial court's contempt finding against her individually was contrary to law, against the manifest weight of the evidence, and an abuse of its discretion. Specifically, Reichardt argues that *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538 requires a finding of "fraud, an illegal act or similarly unlawful act" before the corporate veil may be pierced. Reichardt points out that the trial court did not find any of the grounds specified in *Dombroski*; but instead, found that her actions were "unjust" and "inequitable"—those grounds expressly rejected in *Dombroski*. Reichardt further argues that the evidence in the record does not support a finding of fraud, illegal act, or similarly unlawful conduct on her part; and therefore, the trial court's decision to pierce is against the manifest weight of the evidence. Accordingly, Reichardt concludes that the trial court's decision to pierce the corporate veil and find her individually in contempt and liable was an abuse of its discretion.

**{¶35}** In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, the Ohio Supreme Court adopted a three-pronged test to determine whether to

pierce the corporate veil and hold individual shareholders, directors, or officers of a corporation personally liable for corporate debts. (1993) 67 Ohio St.3d 274, 617 N.E.2d 1075. The *Belvedere* test provides:

> **The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own,** *(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity,* **and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.**

67 Ohio St.3d at paragraph three of the syllabus (emphasis added). More recently, in *Dombroski v. Wellpoint, Inc.*, the Ohio Supreme Court reconsidered when a corporate veil may be pierced under the *Belvedere* test, focusing specifically on prong two of the test. 2008-Ohio-4827. *Dombroski* came before the Ohio Supreme Court on notice of a certified conflict, pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25, from the Court of Appeals for the Seventh District. Id. at ¶1. The Seventh District certified the following question:

> **Does the second prong of [the test for piercing the corporate veil set forth in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075]*, which states that the corporate veil can be pierced when control of the corporation 'was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity,' also allow the corporate veil to be pierced in cases where control was exercised to commit unjust or inequitable acts that do not rise to the level of fraud or an illegal act?**

Id. The Ohio Supreme Court answered the question in the negative and modified the second prong of the *Belvedere* test. Id. at ¶2.

**{¶36}** Before reaching the Ohio Supreme Court, the Seventh District reversed the trial court's dismissal of a complaint, finding that "[m]any appellate districts, including ours, have defined the second prong of *Belvedere* as including unjust or inequitable acts." Id. at ¶13, citing *Dombroksi v. WellPoint, Inc.* (2007), 173 Ohio App.3d 508, 2007-Ohio-5054, 879 N.E.2d 225, ¶25. Based upon that interpretation, the Seventh District concluded that the plaintiff's alleged bad-faith breach of insurance contract claim was sufficiently unjust to survive a Civ.R. 12(B)(6) motion. Id., citing *Dombroski*, 2007-Ohio-5054, at ¶33.

**{¶37}** The Ohio Supreme Court in *Dombroski* noted that the Seventh District was one of several appellate districts, including our own, which interpreted the second prong of the *Belvedere* test to include "unjust" or "inequitable acts." 2008-Ohio-4827, at ¶21, citing *Stypula v. Chandler*, 11th Dist. No. 2002-G-2468, 2003-Ohio-6413, ¶20; see, also, *Wiencek v. Atcole Co., Inc.* (1996), 109 Ohio App.3d 240, 245, 671 N.E.2d 1339 (3d Dist.); *Robert A. Saurber Gen. Contr., Inc. v. McAndrews*, 12th Dist. No. CA2003-09-239, 2004-Ohio-6927, ¶34 ("[T]he true question to be asked is whether it would be unjust under the circumstances of each case to not pierce the corporate veil."); *Sanderson Farms, Inc. v. Gasbarro*, 10th Dist. No. 01AP-461, 2004-Ohio-1460, ¶38. The Ohio Supreme Court found that this liberal interpretation of *Belvedere*'s prong two was

contrary to the plain language used in its *Belvedere* opinion and significantly increased the number of cases in which piercing was available. *Dombroski*, 2008-Ohio-4827, at ¶¶21-22.

{¶38} On the other hand, the Ohio Supreme Court noted that the Court of Appeals for the Sixth District had adopted a narrower reading of *Belvedere*'s second prong to "limit[] piercing to those cases in which the defendant shareholder has used its control of the corporate form to commit fraud or an illegal act." Id. at ¶23, citing *Collum v. Perlman* (Apr. 30, 1999), 6th Dist. No. L-98-1291. The Sixth District in *Collum v. Perlman* specifically rejected our district's expansive view of *Belvedere*'s prong two in *Wiencek*, 109 Ohio App.3d 240, finding that the Ohio Supreme Court "appears to have limited the application of the doctrine to those situations in which 'control over the corporation by those to be held liable was exercised in such a manner as to commit *fraud or an illegal act* against the person seeking to disregard the corporate entity.'" Id., citing *Perlman*, supra, (emphasis in original).

{¶39} Although the Ohio Supreme Court acknowledged that there were compelling reasons to adopt the broader reading of *Belvedere* used by a majority of courts, it found that the Sixth District's narrower reading was consistent with *Belvedere*'s principle that piercing the corporate veil is a "rare exception" to be applied only in "case[s] of fraud or certain other exceptional circumstances." Id. at ¶26. The Court then clarified that *Belvedere*'s second prong requires that "the

plaintiff * * * demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit *fraud, an illegal act, or a similarly unlawful act*." Id. at ¶29 (emphasis added). The Supreme Court further advised that "[c]ourts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." Id. Ultimately, in *Dombroski*, the Ohio Supreme Court found that the Seventh District erred in reversing the trial court's dismissal of a complaint that alleged insurer bad faith, finding that this cause of action was a "straightforward tort, a basic example of unjust conduct," but not the type of "exceptional wrong" for which piercing was designed. Id. at ¶30.

{¶40} As argued by Reichardt, the trial court sub judice applied the old version of the *Belvedere* test, enunciated prior to *Dombroski*, 2008-Ohio-4827. (Nov. 14, 2008 JE, Doc. No. 82, at 7). The trial court also applied this Court's broader interpretation of *Belvedere*'s second prong stated in *Wiencek*, 109 Ohio App.3d 240. (Id. at 7-8). Specifically, the trial court stated that:

> **One seeking to disregard the corporate entity may present evidence that the share holders exercised their control over the corporation in such a manner as to commit fraud, illegal or other unjust or inequitable act upon the person seeking to disregard the corporate entity in order to satisfy the second prong of the test enunciated in <u>Belvedere</u>. <u>Wiencek v. Atcole Co. Inc.</u>, 109 Ohio App. 3d 240 (Seneca Cty. 1996).**

(Id.). The trial court also appears to have *exclusively* relied upon our broader interpretation of *Belvedere* in *Wiencek* to pierce RI's corporate veil and hold

Reichardt individually liable for a corporate debt. The trial court stated, in pertinent part:

> **Wendi Reichardt's attempt to disclaim personal liability from the bid made by her on behalf of Reichardt Investments, when she was fully aware that Reichardt Investments was merely a shell corporation and contained no assets of its own with which to support the bid she was making on behalf of Reichardt Investments,** *would be an unjust and inequitable act***, damaging the creditors of Waldo Pub LLC. If liability is limited to the shell corporation of Reichardt Investments, the creditors of Waldo Pub LLC will be left holding the preverbal [sic] bag for the losses incurred as a result of the failure of Reichardt Investments to honor its obligations to pay its bid at judicial sale. <u>Kays v. Schregardus</u>, 138 Ohio App. 3d 225 (Portage Cty. 2000).**

(Id. at 8) (Emphasis added). The trial court made no finding of fraud, illegal act, or similarly illegal conduct.

{¶41} The trial court's reliance upon this Court's decision in *Wiencek*—finding that "unjust" or "inequitable acts" are sufficient to meet *Belvedere*'s second prong—was misplaced following *Dombroski*, 2008-Ohio-4827. As noted above, the Ohio Supreme Court in *Dombroski* specifically listed our decision in *Wiencek* as an example of the broad interpretation it was rejecting. 2008-Ohio-4827, at ¶¶21-22. Thus, our interpretation of *Belvedere*'s second prong in *Wiencek* is no longer viable following *Dombroski*. After *Dombroski*, *Belvedere*'s second prong requires that "the plaintiff * * * demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit *fraud, an illegal act, or a similarly unlawful act*." 2008-Ohio-4827, at ¶29

- 22 -

(emphasis added). See, also, *Minno v. Pro-Fab, Inc.*, 121 Ohio St.3d 464, 2009-Ohio-1247, 905 N.E.2d 613, ¶¶7, 9.

{¶42} Aside from the fact that the trial court herein made no finding of fraud, illegal act, or similarly illegal conduct as required under *Belvedere*'s second prong after *Dombroski*, the record contains insufficient evidence for such a finding. Reichardt's alleged instances of malfeasance according to appellees and the trial court were: breach of the management agreement; under-capitalization of RI; and agreeing to purchase the bar for $224,000 at the April status hearing when she *knew* that she would not be able to get financing. These alleged acts, while perhaps unjust or inequitable, do not rise to the level of fraud, an illegal act, or similarly illegal conduct. Even prior to *Dombroski*'s modification, a corporation's breach of contract, standing alone, was insufficient to satisfy the second prong of the *Belvedere* test. *Siva v. 1138 LLC*, 10th Dist. No. 06AP-959, 2007-Ohio-4667, ¶21, citing *Connolly v. Malkamaki*, 11th Dist. No. 2001-L124, 2002-Ohio-6933, ¶34. Additionally, under-capitalization of RI, while relevant to *Belvedere* prong one, is only relevant to *Belvedere* prong two if it was done to commit a fraud, illegal act, or similar illegal conduct. Finally, the third purported bad act on the part of Reichardt is not supported by the record. Reichardt testified that she returned to the bank after the April 25th status hearing and found out that financing was no longer available. (Sept. 19, 2008 Tr. at 18). The evidence presented at the hearing demonstrates that Reichardt *should have known* that

financing would no longer be available following the loss of her husband's job, but this is evidence of negligent, not purposeful or even reckless conduct. Furthermore, there is insufficient evidence that Reichardt represented that she could purchase the property at the April status hearing *with the intent of misleading another to rely upon it*. As such, we find that this alleged bad act was insufficient to constitute fraud that would support piercing the corporate veil. See, e.g., *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶47 (elements of fraud).

{¶43} The evidence from the contempt hearing read as a whole demonstrates that Reichardt neglected to strictly adhere to corporate formalities and was admittedly unsuccessful at business, not that she committed fraud, an illegal act, or similarly illegal conduct. Reichardt testified that creating RI for the purpose of purchasing and operating Waldo Pub was her first business venture. (Oct. 27, 2008 Tr. at 9). Reichardt did file an organization/registration for a limited liability company with the Ohio Secretary of State's Office. (Ex. 8). Reichardt testified that she had secured a $100,000 loan from Citizens Bank for RI to purchase the property, and that she was going to borrow the remaining amount from a family member. (Sept. 19, 2007 Tr. at 11). Reichardt testified that she was sure the loan application was in RI's name, though she acknowledged that her name likely appeared on the application as well. (Id. at 11-12). The record, however, contains a September 2, 2008 letter indicating that "* * * at this time,

*Wendi Reichardt* will not be approved for financing for the purchase if [sic] the Ingles Bar and Grill in Waldo, Ohio due to current financial condition and change in income." (Ex. 1) (emphasis added). A copy of the loan application also indicates that the loan was in Reichardt's name, not in RI's name. (Ex. 2). Reichardt further testified that prior to forming RI, she withdrew money from her personal bank account to run the business. (Oct. 27, 2008 Tr. at 43). Reichardt acknowledged that her husband also contributed personal monies to the business. (Id. at 38).

{¶44} On the other hand, the management agreement with the receiver was signed "Wendi Reichardt, Mgr." as agent of Reichardt Investments, LLC. (Doc. No. 32, Ex. 6). Reichardt testified that RI had a checking account and debit card, though it did not file a separate tax return. (Oct. 27, 2008 Tr. at 39-40). Reichardt testified that the personal monies invested into the business by her and her husband were loans to the business. (Id. at 43). The evidence also demonstrates that during the seven months RI operated the business, it lost $47,631. (Id. at 19); (Ex. 6). Reichardt also testified the monies she invested and lost by operating the business included $15,293.44 that she withdrew from her personal retirement plan. (Oct. 27, 2008 Tr. at 20).

{¶45} Based upon our review of the evidence, we hold that there is insufficient evidence to find that Reichardt committed a fraud, illegal act, or similarly illegal conduct. As we have stated, the evidence taken in its totality

demonstrates that Reichardt, a first-time business woman, was often ignorant of corporate formalities and, quite frankly, unsuccessful at business—but was not committing fraud, illegal acts, or similarly illegal conduct that would justify piercing. This is not one of those "rare exception[s]" or "exceptional circumstances" where piercing is merited. *Dombroski*, 2008-Ohio-4827, at ¶16. Therefore, the trial court's decision to pierce the corporate veil of RI and hold Reichardt individually in contempt *on that basis* was in error.

{¶46} Nonetheless, as we have already stated in assignment of error one, the trial court had inherent, equitable, and statutory authority to hold Reichardt in contempt individually for disobeying the court's order confirming sale based upon her actions as RI's sole/managing member. It is a well settled rule of appellate review that "[a] judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." *Bonner v. Bonner*, 3d Dist. No. 14-05-26, 2005-Ohio-6173, ¶18, citing *Lust v. Lust*, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶32, citing *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 110, 233 N.E.2d 137. The real question, then, is not whether the trial court acted within its jurisdiction to hold Reichardt in contempt or whether the trial court appropriately pierced RI's corporate veil as she argues; but rather, whether the trial court's finding of contempt and imposition of financial penalties was an abuse of its discretion. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249. An abuse of discretion is more than an error of

law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶47} The record sub judice contains competent, credible evidence from which the trier of fact could find that Reichardt was the sole member of RI. (Sept. 19, 2008 Tr. at 8-9). The record also contains competent, credible evidence from which the trier of fact could find that Reichardt had notice, either through counsel or personally, of the court's order confirming sale. (Id. at 32, 33); (Oct. 27, 2008 Tr. at 28-29, 30-31); (Ex. C). The record contains competent, credible evidence from which the trier of fact could conclude that Reichardt, as the sole member of RI, participated in violating the court's order confirming sale. (Ex. D); (Sept. 19, 2008 Tr. at 28, 32, 34-36, 46); (Oct. 27, 2008 Tr. at 29, 38, 43-44). Under these circumstances, we cannot find that the trial court abused its discretion by holding Reichardt in contempt.

{¶48} Likewise, we cannot find that the trial court abused its discretion by imposing, as a financial penalty, the difference between RI's bid of $224,000 and the proceeds from any subsequent receiver's sale of the assets, plus the receiver's fees for services occurring on and after March 26, 2008 (30 days subsequent to the receiver's February 25, 2008 sale). (Nov. 14, 2008 JE, Doc. No. 82 at Conclusion of Law #9). The trial court essentially crafted its financial penalty against RI and Reichardt in the amount of the damages sustained by the receiver and Waldo

Pub's creditors.  This penalty was appropriately and fairly tailored, not to reward the appellees but to cover their damages.  *Electrical Workers*, 340 F.3d at 385, citing *U.S. v. United Mine Workers of America* (1947), 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (sanction of civil contempt may include a fine designed to compensate the complainant).  Accordingly, we find no abuse of the trial court's discretion with regard to its imposed financial penalty.

**{¶49}** Appellant Reichardt's third assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT'S 11/14/08 DECISION TO DENY APPELLANT REICHARDT INVESTMENT, LLC'S RELIEF FROM JUDGMENT PER CIVIL RULE 60(B) WAS CONTRARY TO LAW AND AN ABUSE OF DISCRETION.**

**{¶50}** Appellants' fourth assignment of error alleges that the trial court's decision to deny RI's Civ.R. 60(B) motion for relief from judgment was contrary to law and an abuse of its discretion.  Specifically, appellants argue that Civ.R. 60(B) provides an appropriate remedy in cases where an attorney acts without his/her client's authority to settle or compromise a claim or defense, citing *Fanta v. Minerd* (Apr. 3, 1980), 8th Dist. No. 39491.  We disagree.

**{¶51}** To prevail on a Civ.R. 60(B) motion, the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)

through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. An appellate court reviews the denial of a Civ.R. 60(B) motion under an abuse of discretion standard. *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 174, 637 N.E.2d 914. An abuse of discretion is more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶52} The trial court found that RI was not entitled to relief under Civ.R. 60(B) because "* * * a client is bound by the acts of his attorney, whether authorized or not, and that an attorney's misfeasance or nonfeasance against his own client does not justify Civil Rule 60(B) relief from judgment." (Nov. 14, 2008 JE, Doc. No. 81). We agree.

{¶53} As RI points out, some courts have stated in dicta that Civ.R. 60(B)(5) can be used to vacate a judgment when an attorney settles or compromises a claim or defense without their client's consent. See, e.g., *Green Point Development, Inc. v. City of Green*, 9th Dist. No. 22081, 2005-Ohio-74, ¶11 (trial court abused its discretion by failing to hold an evidentiary hearing for Civ.R. 60(B)(5) motion where evidence demonstrated that city law director lacked legal authority to enter into agreed judgment entry); *Sperry v. Hlutke* (8th Dist.,

1984), 19 Ohio App. 156, 483 N.E.2d 870; (where a party properly demonstrates that his attorney was without authority to settle or compromise a claim or defense, then the party may seek to vacate that judgment pursuant to Civ.R. 60(B)(5)) (citing *Fanta v. Minerd*, 8th Dist. No. 39491); *Dawson v. Udelson* (8th Dist., 1987), 37 Ohio App.3d 141, 524 N.E.2d 525. See, also, *Vavrinak v. Freeman* (Sept. 12, 1997), 11th Dist. No. 96-T-5536, at *1 (trial court did not abuse its discretion in holding an evidentiary hearing on appellant's unsupported claim that she did not authorize her attorney to settle the lawsuit made in her Civ.R. 60(B) motion); *Flowers v. Rigdon* (12th Dist., 1995), 101 Ohio App.3d 172, 655 N.E.2d 235 (affirming trial court's grant of Civ.R. 60(B)(5) motion where plaintiff-victims' "attorney perpetrated "fraud on the court" by falsely informing defendants that [he] had authority to settle their case, by forging plaintiffs' signatures on entry of dismissal, release, and settlement check, and by keeping settlement proceeds for himself* * *"). However, this Court is not persuaded by these decisions. Aside from the fact that this purported rule of law is found in dicta, two of the appellate courts in these cases were reviewing a trial court's decision to *grant* a Civ.R. 60(B) motion. *Freeman*, 11th Dist. No. 96-T-5536; *Flowers*, 101 Ohio App.3d 172. Since appellate courts review a trial court's decision to grant or deny a Civ.R. 60(B) motion under an abuse of discretion standard, it is understandable why the courts in these cases found no abuse of

discretion. That is quite different, however, from finding that a trial court abuses its discretion by *denying* a Civ.R. 60(B) motion under these circumstances.

**{¶54}** Only one appellate court has found an abuse of discretion when a trial court denies a Civ.R. 60(B) motion when the movant alleges that an attorney settled a claim or defense without their consent. *Fanta v. Minerd*, 8th Dist. No. 39491. The Court in *Fanta*, however, reached its conclusion not by analyzing Ohio Civil Rule 60, but by analyzing federal case law interpreting Federal Civil Rule 60. 8th Dist. No. 39491, at *4. Interestingly enough, *Fanta* has only been cited by one court, the Eighth District in *Sperry*, 19 Ohio App.3d at 159. The Eighth District in *Sperry*, though, only noted that these circumstances "*may* afford grounds for relief from judgment," not that a trial court abuses its discretion by denying a Civ.R. 60(B) motion. Id. The only other case that even approximates the rule in *Fanta* is *City of Green* wherein the appellate court found that the trial court abused its discretion by failing to hold a hearing. 2005-Ohio-74. This case is, however, factually and legally distinguishable from *City of Green*. The issue in *City of Green* was whether a settlement agreement entered into by a city law director should be vacated where the law director possessed authority to approve the settlement agreement by virtue of a resolution that never became effective. 2005-Ohio-74. Furthermore, even if we were persuaded by *City of Green*, the trial court sub judice conducted a contempt hearing, which provided it with the facts and circumstances that formed the basis of RI's Civ.R. 60(B) motion.

{¶55} This Court is also not persuaded by these cases because their purported rule of law is in conflict with Ohio Supreme Court precedent, as noted by the Court of Appeals for the Seventh District. *Louden v. Cooper*, 7th Dist. No. 04 MA 9, 2004-Ohio-5127, ¶19. See, also, *Flowers*, 101 Ohio App.3d at 176-77 (Jones, P.J., dissenting). The Ohio Supreme Court in *Argo Plastics Products Co. v. City of Cleveland* found that the City of Cleveland was not entitled to relief under Civ.R. 60(B)(1) for surprise when it's attorney settled a claim for over $500,000 even though it had only authorized the attorney to settle for no more than $2,500. (1984) 15 Ohio St.3d 389, 392, 474 N.E.2d 328. In analyzing the city's claim, the Court found its rule in *GTE Automatic Elec., Inc.* applicable, stating:

> **The city may indeed have been factually surprised, perhaps even shocked, that its counsel, who supposedly only had authority to settle a case for $2,500, settled the instant lawsuit for over $500,000. Nevertheless, we hold that the city is not entitled to relief from judgment under Civ.R. 60(B) pursuant to *GTE, supra.***
>
> **This court held at paragraph four of the syllabus in *GTE, supra,* that:**
>
>> **"As a general rule, the neglect of a party's attorney will be imputed to the party for the purposes of Civ.R. 60(B)(1). (*Link v. Wabash R.R. Co.,* 370 U.S. 626 [82 S.Ct. 1386, 8 L.Ed.2d 734], followed.)"**
>
> **In *GTE, supra,* we declined to allow relief from judgment under Civ.R. 60(B)(1) to a party whose attorney allegedly committed excusable neglect which resulted in a default judgment. We stated therein that:**

> " ' * * * [I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because * * * [defendant] should not be penalized for the omissions of his own attorney would be visiting the sins of * * * [defendant's] lawyer upon the * * * [plaintiff]." *Id.* at 152, 351 N.E.2d 113, quoting *Link v. Wabash RR. Co.* (1962), 370 U.S. 626, 634, fn. 10, 82 S.Ct. 1386, 1390, fn. 10, 8 L.Ed.2d 734.

In our view, the principle expressed in *GTE, supra,* with respect to excusable neglect under Civ.R. 60(B)(1), applies equally to a claim of surprise under the same provision. For purposes of Civ.R. 60(B)(1), then, the conduct of counsel is imputed to his client. It follows that the city may not now obtain relief from judgment under Civ.R. 60(B)(1) solely on the ground of misconduct by *its own attorney.* Thus, under our holding in *GTE, supra,* any "mistake, inadvertence, surprise or excusable neglect," as set forth in Civ.R. 60(B)(1), by counsel for a party does not entitle that party to relief from judgment under the rule.

In the case *sub judice,* the city occupies the same position as did ARC Industries in *GTE, supra.* As we did in *GTE,* we therefore impute Kless' actions to the city in considering whether the city may obtain relief from judgment under Civ.R. 60(B)(1). That being the case, the city's contention that Civ.R. 60(B) relief is warranted where its attorney exceeds his settlement authority is without merit. The city's remedy, if any, lies elsewhere.

While we have sympathy for the city's situation, we feel that it would be manifestly unjust to appellants herein to vacate the judgment entered below pursuant to the settlement on the amount of damages. Using the language employed in *GTE, supra,* we would be "'visiting the sins of * * * [the city's] lawyer upon the * * * [appellants].'" *Id.,* 47 Ohio St.2d, at 152, 351 N.E.2d 113. Such would run afoul of the established purpose of Civ.R. 60(B) which is to afford "relief in the interests of justice." *Svoboda v. Brunswick, supra,* 6 Ohio St.3d, at 351, 453 N.E.2d

**648. See, also, *Blasco v. Mislik* (1982), 69 Ohio St.2d 684, 687-688, 433 N.E.2d 612 [23 O.O.3d 551].**

Id. at 392-93, citing *GTE*, 47 Ohio St.2d at 152, paragraph four of the syllabus. Several courts have cited *Argo* for the proposition that vacating judgments based upon an attorney's unauthorized settlement is inappropriate under either Civ.R. 60(B)(1) **or** (B)(5). *Cooper*, 2004-Ohio-5127, at ¶19; *Brinkr, Inc. v. United Riggers, Inc.* (Feb. 22, 2000), 5th Dist. No. 1999CA00300, at *4; *Mollis v. Rox Constr. Co., Inc.* (Dec. 4, 1992), 11th Dist. No. 92-T-4688, at *4; *Charles v. Anthony* (Sept. 15, 1992), 10th Dist. No. 92AP-51, at *4; *Weir v. Needham* (9th Dist., 1985), 26 Ohio App.3d 36, 498 N.E.2d 175; *Maumee Equip., Inc. v. Smith* (Nov. 22, 1985), 6th Dist. No. L-85-168. See, also, *Flowers*, 101 Ohio App.3d at 176-77 (Jones, P.J., dissenting). We agree with the courts in these cases that an attorney's unauthorized settlement of a claim or defense does not provide grounds for relief under Civ.R. 60(B)(1) or (B)(5).

{¶56} This Court also notes that two of the cases finding that an attorney's unauthorized settlement of a claim or defense can provide grounds for relief under Civ.R. 60(B), including appellants' primary case of *Fanta v. Minerd*, were decided prior to the Ohio Supreme Court's decision in *Argo*. 8th Dist. No. 39491; *Sperry*, 19 Ohio App. 156. Following *Argo*, all of the districts previously stating that these circumstances provide grounds for relief under Civ.R. 60(B) have since found otherwise. *Shimola v. City of Westlake* (Sept. 14, 2000), 8th Dist. Nos.

- 34 -

75164, 75165, 75204, at \*10; *Henderson v. Henderson* (Mar. 22, 1990), 8th Dist. No. 56527, at \*2; *Berry v. Beckwith* (Jan. 10, 1991), 8th Dist. No. 57712, at \*5; *Mollis*, 11th Dist. No. 92-T-4688, at \*4; *Hicks v. Washington* (July 16, 1987), 8th Dist. No. 52915, at \*2; *Needham* (9th Dist.), 26 Ohio App.3d 36. See, also, *Godec v. Hastings* (June 26, 1998), 11th Dist. No. 97-L-128.

**{¶57}** For all these reasons, we hold that an attorney's unauthorized settlement of a claim or defense does not provide grounds to vacate a judgment pursuant to Civ.R. 60(B)(1) or (B)(5).

**{¶58}** Applying this rule herein, the trial court properly denied RI's Civ.R. 60(B) motion. RI's motion alleged that its attorney agreed to purchase the assets of Waldo Pub for $224,000 without its consent and, as such, it was entitled to relief under Civ.R. 60(B)(1) or (B)(5). (Doc. No. 78). Evidence at the contempt hearing demonstrated that RI agreed to purchase the property for $224,000, in part, due to the receiver's agreement to forgo litigation against RI for its alleged breach of the management agreement. (Sept. 19, 2008 Tr. at 44). RI's agreement to purchase the property was, then, also a settlement of claims. Counsel's act of settling the claim(s) against RI and binding RI to purchase the property, whether authorized or not, does not provide grounds for relief under Civ.R. 60(B)(1) or (B)(5). Therefore, the trial court did not abuse its discretion by denying appellant RI's motion.

**{¶59}** Appellants' fourth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT'S 11/14/08 JUDGMENT FINDING RI, LLC IN CONTEMPT WAS AN ABUSE OF DISCRETION.**

{¶60} In appellants' second assignment of error, they maintain that the trial court abused its discretion by finding RI in contempt of the court's order confirming sale. RI argues that the trial court lacked authority under R.C. 2329.31 to dismiss the highest bidder, Hardacre, and confirm sale to it as the second highest bidder. RI also argues that it had just cause not to comply with the court's order because the uncontroverted evidence demonstrated that it never authorized its attorney to agree to the sale. Under these circumstances, RI argues that the trial court abused its discretion by finding it in contempt.

{¶61} Appellees Advantage and the receiver argue that appellants have failed to comply with App.R. 4(A). Specifically, appellees argue that the trial court's order confirming sale was filed on May 27, 2008, but appellants' notice of appeal was filed on December 11, 2008, well outside App.R. 4(A)'s thirty-day time limitation.

{¶62} As an initial matter, as appellees argue, this Court lacks jurisdiction to set aside the trial court's order confirming sale on the ground that it lacked authority to confirm the sale to the second highest bidder. An order confirming sale by a receiver is a final appealable order. *Mandalaywala v. Zaeleski* (1997), 124 Ohio App.3d 321, 329-30, 706 N.E.2d 344, citing *Dairymens' Co-operative*

*Sales Co. v. Frederick Dairy Co.* (7th Dist., 1933), 1933 WL 2262; *Quill v. Troutman Ent., Inc.*, 2nd Dist. No. 20536, 2005-Ohio-2020, ¶50, citing *Zaeleski*, 124 Ohio App.3d 321. App.R. 4(A) provides:

> **A party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.**

A party's failure to comply with App.R. 4(A)'s thirty-day filing deadline deprives this Court of jurisdiction. *State ex rel. Pendell v. Adams County Bd. of Elections* (1988), 40 Ohio St.3d 58, 531 N.E.2d 713. The trial court's order confirming sale was entered on May 27, 2008, but appellants' notice of appeal was not filed until December 11, 2008, well outside App.R. 4(A)'s deadline. (Doc. Nos. 46, 85). Accordingly, this Court lacks jurisdiction over appellants' assignment of error in so far as it challenges the trial court's order confirming sale. *State ex rel. Adams*, 40 Ohio St.3d 58. However, we interpret appellants' argument to be that the trial court's lack of legal authority under R.C. 2329.31 provided RI with just cause to disobey the court's order. We have jurisdiction to consider this argument since it relates to the trial court's contempt finding, which appellants timely appealed.

{¶63} A trial court's contempt finding is reviewed under an abuse of discretion standard. *Birkel*, 65 Ohio St.2d 10. An abuse of discretion is more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶64}** RI argues that it had just cause to disobey the trial court's order since it lacked authority under R.C. 2329.31 to confirm sale to the second highest bidder. We disagree. Even if we were to assume that the trial court's order confirming sale was erroneous for the reason appellants suggest, appellants were still bound by the court's order. *State ex rel. Beil v. Dota* (1958), 168 Ohio St. 315, 319, 154 N.E.2d 634 ("* * * where a court has jurisdiction to make an order, the order is enforceable no matter how erroneous it may be."). See, also, *In re Guardianship of Jadwisiak* (1992), 64 Ohio St.3d 176, 184, 593 N.E.2d 1379, citing *State v. Morrow* (1937), 57 Ohio App. 30, 11 N.E.2d 273 (violation of a *void* order is not contempt); *Northland Ins. Co. v. Poulus*, 7th Dist. No. 06 MA 160, 2007-Ohio-7208, ¶40 (explaining that an order is "void" under *State ex rel. Beil v. Dota*, supra, if entered without subject matter or personal jurisdiction). The trial court here had subject matter jurisdiction to enter the order confirming sale pursuant to R.C. 2329.31. Furthermore, appellants do not allege that the trial court lacked personal jurisdiction over RI, nor would we find a lack thereof based upon our prior disposition of this issue as to Reichardt. Thus, we reject RI's argument that the trial court's purported lack of authority under R.C. 2329.31 constituted just cause to disobey the court's order.

**{¶65}** RI also argues that it had just cause to disobey the court's order confirming sale because it did not authorize its attorney to agree to the sale. RI again points to *Fanta v. Minerd*, 8th Dist. No. 39491 and argues that since it was

entitled to relief under Civ.R. 60(B), it had just cause to disobey the court order. RI also points out that it did not ratify its attorney's agreement to the sale, but, upon notice of the agreement, immediately hired new counsel and notified the receiver of its intent not to purchase the property. We reject these arguments as well. To begin with, *Fanta v. Minerd* dealt with whether an attorney's unauthorized settlement of a claim or defense provides grounds for relief under Civ.R. 60(B) not whether such circumstances can constitute just cause to disobey a court order. 8th Dist. No. 39491, at *3-4. Also, we have already rejected *Fanta*'s purported rule of law for several reasons stated above. Ante. at 29-33. Furthermore, appellants have provided no authority for the proposition that an attorney's unauthorized conduct provides just cause for a client to disobey a court order, and this Court has not found any law supporting that position. See 17 Ohio Jurisprudence 3d Contempt, Section 40 (defenses to contempt); 17 American Jurisprudence 2d Contempt, Section 185 (same). Therefore, we find that the trial court did not abuse its discretion by holding RI in contempt.

{¶66} Having found no abuse of discretion with the trial court's finding of contempt, we now proceed to its imposed financial penalty. We have already found, in assignment of error three, that the trial court's penalty against Reichardt and RI for the amount of damages sustained by the receiver and Waldo Pub's creditors was not an abuse of its discretion. Ante. at 25-26; (See Nov. 14, 2008 JE, Doc. No. 82 at Conclusion of Law #9). However, to the extent the trial court

ordered that its previously granted administrative *lien* of $17,214.78 to RI be forfeited, its judgment *was* an abuse of its discretion.

**{¶67}** On December 26, 2007, the receiver filed a motion for an order approving terms of a rescheduled sale wherein he recommended to the court, in pertinent part:

> **1.** **that RI be given a "bid credit" of $17,214.78 for sufficiently documented fixed improvements to the assets that have increased the value of the assets, but are not removable in the event it is not the successful bidder.**
> **2.** **that, in the event RI is not the successful bidder at public sale, that it be paid the amount of $17,214.78, reflecting the amount of the above-referenced investments, as an administrative expense of the receivership, so as to ensure that this interested third-party will at least be paid in full;**

(Doc. No. 30 at 4). On January 9, 2008, the trial court adopted and approved the receiver's recommendation, finding:

> **(a)** **Reichardt Investments has increased the value of the assets by way of its operation of the business, and investments of money, both prior to and during the receivership, and that Reichardt Investments is entitled to an equitable administrative lien upon the assets in the amount of $17,214.78, and shall be entitled to a bid credit in the same amount at sale;**

(Doc. No. 33). After finding RI in contempt of its order confirming sale though, the trial court found that: "[g]iven the actions of Wendi Reichardt and Reichart Investments, it is appropriate that the previous credit granted by this Court to Wendi Reichardt and Reichardt Investments of $17,000 should be ordered forfeited." (Nov. 14, 2008 JE, Doc. No. 82, at Conclusion of Law #10); (Nov. 14,

2008 JE, Doc. No. 83). It is not clear from the judgment entry whether the trial court ordered forfeited its previously granted "bid credit" of $17,214.78 only, or whether it intended to order forfeited its previously granted "equitable administrative lien" of $17,214.78 as well. Since RI was not the successful bidder, it was reasonable for the trial court to order forfeited its previously granted "bid credit."

{¶68} On the other hand, if the trial court ordered forfeited its previously granted "equitable administrative lien" of $17,214.78 as well, then RI lost the value of its improvements to the assets during the receivership—improvements that, according to the receiver's recommendation, were "not removable in the event RI [was] not the successful bidder." (Doc. No. 30). More troubling is the fact that Waldo Pub's creditors stand to gain a potential windfall given that, in addition to this penalty, RI and Reichardt have been sanctioned in the amount of damages plus costs of the receiver. Although such a significant penalty might be reasonable if RI's or Reichardt's acts were intentionally or maliciously done to defraud the court, its officers, or the parties, the evidence establishes, *at most*, reckless behavior on their part. Under these circumstances, we cannot find the trial court's decision to order forfeited RI's $17,214.78 "equitable administrative lien" reasonable, especially in light of the fact that Waldo Pub's creditors stand to gain a potential windfall.

**{¶69}** Therefore, this Court finds that *if* the trial court ordered forfeited its previously granted "equitable administrative lien" of $17,214.78, it abused its discretion in doing so. However, if the trial court intended to order forfeited its previously granted "bid credit" only—maintaining RI's "equitable administrative lien"—then we find no abuse of discretion. We remand this matter to the trial court for clarification or modification of its judgment entry consistent with our opinion herein.

**{¶70}** Appellants' second assignment of error is, therefore, sustained to the extent expressly provided herein.

**{¶71}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued in assignments of error one, three, and four, we affirm the judgment of the trial court as to those assignments of error. However, having found error prejudicial to the appellants herein in the particulars assigned and argued in assignment of error two, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jnc**